577 F.2d 873
 24 UCC Rep.Serv. 1141
 Joan WESTERMAN, as personal representative of the Estate of
Michael Westerman, Deceased, etc., et al.,
Plaintiffs-Appellees, Cross-Appellants,
v.
SEARS, ROEBUCK AND COMPANY, Defendant-Appellant, Cross-Appellee.
 No. 75-3885.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 1, 1978.
 
 Sam Daniels, Miami, Fla., for defendant-appellant, cross-appellee.
 Marvin Weinstein, Miami Beach, Fla., Robert Orseck, Miami, Fla., for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Southern District of Florida.
 Before THORNBERRY, GODBOLD and FAY, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 This is a wrongful death action in which the defendant, Sears, Roebuck and Company (Sears), appeals a $901,510 final judgment for the plaintiff, Joan Westerman, as personal representative of the Estate of Michael Westerman, deceased. As grounds for this appeal Sears asks us to decide:
 
 
 2
 I. Whether Florida would apply its Wrongful Death Act, Fla.Stat. 768.16 et seq., in a products liability case where the product was sold in Florida to a Florida citizen but the fatal injuries occurred in Texas.
 
 
 3
 II. Whether on the present record the trial court correctly charged the jury on a manufacturer's duty to warn.
 
 
 4
 III. Whether the trial judge erred in holding that contributory negligence, assumption of the risk, and misuse of the product were not available defenses and refusing to instruct the jury on those defenses.
 
 
 5
 IV. Whether Sears is entitled to a new trial on both liability and damages pursuant to this Court's decision in Edwards v. Sears, Roebuck and Company, 512 F.2d 276 (5th Cir. 1975).
 
 
 6
 On cross appeal by Mrs. Westerman we are asked to consider:
 
 
 7
 V. Whether the trial court abused its discretion in entering various remittiturs of the verdicts returned by the jury.
 
 
 8
 For the following reasons we affirm the judgment of the district court but modify it with respect to the amount of damages.
 
 PROCEDURAL HISTORY
 
 9
 In 1973, Mrs. Westerman sued Sears in a Dade County, Florida, trial court. In her three count complaint, she sued as personal representative for her husband's wrongful death (Count I), as mother and next friend to recover for her son, David's, personal injuries (Count II),[1] and individually, to recover for her own personal injuries (Count III). The complaint alleged that the automobile accident was caused by a defective tire and sought recovery under the theories of negligence and breach of express and implied warranties. Later, the complaint was amended to include the theory of strict liability. Sears' answer and amended answer denied the material allegations of the complaint and asserted contributory negligence, assumption of the risk, the statute of limitations, and misuse of the product as defenses.
 
 
 10
 Subsequently, the cause was removed to United States District Court in the Southern District of Florida. Diversity jurisdiction existed because plaintiff was a Florida citizen and Sears was incorporated or had its principal place of business in New York and Illinois.
 
 
 11
 The trial court ordered a bifurcated trial on liability and damages and ruled prior to trial that Texas "substantive tort law is applicable to the issues of negligence and strict liability." As to the warranty claims, the trial judge held since both Texas and Florida had adopted the Uniform Commercial Code, "its warranty sections would apply." The trial court also ruled that if the two states interpreted a Code section differently, the Florida interpretation would prevail "because a more significant part of the sales transactions occurred within Florida." He also ruled that Florida law governed as to what defenses were available in warranty actions.
 
 
 12
 During the liability trial plaintiff abandoned her negligence claims and case went to the jury on the warranty and strict liability claims. The jury returned verdicts for plaintiff on all claims.
 
 
 13
 An issue contested during the damage trial and here is whether the recoverable damages in this wrongful death action were governed by the Texas or the Florida wrongful death act. Sears claimed the Texas act applied and plaintiff the Florida statute. The major difference between the two acts is that in Texas recovery may be had for decedent's pain and suffering but not for the mental pain and suffering of beneficiaries because of decedent's death. The converse is true in Florida.
 
 
 14
 The trial court reserved ruling on this choice of law issue and submitted a special verdict form to the jury which required the jury to assess damages separately for all disputed damage elements. The jury returned the following verdict:
 
 
 15
 I. For the estate of Michael
 Westerman
 a. Medical and funeral expenses $ 2,500
 b. Conscious pain and suffering
 of decedent (element of recovery
 in Texas only) 200,000
 II. (A) For the minor son of decedent,
 David, for his father's
 death
 a. Loss of parental companionship
 and for his mental pain
 and suffering resulting from
 his father's death 500,000
 b. Loss of services, moral advice,
 education, care, counsel,
 instruction and guidance 500,000
 (B) For the wife of decedent,
 Joan, for her husband's death
 a. Loss of companionship and
 protection and her mental
 pain and suffering resulting
 from her husband's death 350,000
 b. Loss of services and care 200,000
III. For the personal injuries of Joan
 Westerman 560,000
 ----------
 TOTAL $2,312,500
 
 
 16
 Upon a motion for new trial and/or remittitur which the trial court granted and plaintiff accepted under protest the judge reduced the damages as follows:
 
 
 17
 I. a. Medical and funeral expenses
 reduced to $ 1,510
 b. Pain and suffering of
 decedent (if recoverable) 50,000
 II. (A)
 a. Loss of parental companionship,
 etc. reduced to 200,000
 b. Loss of services, etc. reduced
 to 150,000
 (B)
 a. Recovery of wife for loss, left
 intact 350,000
 b. Recovery of wife for loss, left
 intact 200,000
 ----------
 TOTAL $ 951,510
 
 
 18
 The trial court then ruled the Florida wrongful death act was applicable (thereby excluding I(b) $50,000 from the allowed recovery) and the final judgment totaling $901,510 was entered. This appeal and cross appeal followed.
 
 FACTS
 
 19
 Mrs. Westerman, a Miami, Florida, schoolteacher, and her husband saw a television commercial entitled "The Baja Run in 1969" which advertised Sears Steel-Belted Radial Tires. At that time they owned a 1969 Chevrolet which they had purchased new and had then traveled 15,000 miles. Not needing new tires at the time but drawn by the representations made in this commercial, the couple went to a nearby Sears store in Hollywood, Florida, to look into the purchase of the advertised tires. Wanting to get "the best tires (they) could get" and after being told how wonderful the tires were by the salesperson and being shown the owner's manual and guarantee, the Westermans purchased four new tires for the Chevrolet. On that date, December 29, 1969, the Chevrolet had traveled 15,082 miles.
 
 
 20
 Mrs. Westerman was given the Owner's Manual which had the following language on the front cover:
 
 
 21
 The manual itself contained the following language:
 
 
 22
 "INFLATE TO PRESSURES RECOMMENDED FOR YOUR MAKE, YEAR AND MODEL OF CAR
 
 
 23
 Inflation is a major key to getting the best performance from your ALLSTATE RADIALS. Before mounting, check both front and rear pressures in the tables you received when you bought your tires, or that our salesman printed on the back of this booklet. Your tires will look slightly underinflated at recommended pressures. This is the mark of the Radial tire the new shape of safety do not overinflate."
 
 
 24
 The manual also represented the radial was safe at high speeds and there was practically no chance of a puncture or blow-out.
 
 
 25
 Sears also gave Mrs. Westerman a 40,000-mile guarantee which stated:
 
 
 26
 "SEARS ALLSTATE RADIAL
 
 Passenger Tire Guarantee
 
 27
 SEARS Guarantees the Allstate Radial Tire, when used on passenger cars or station wagons, as follows:
 
 TREAD-LIFETIME GUARANTEE
 
 28
 Guaranteed Against: All failures of the tire resulting from defects in material or workmanship.
 
 
 29
 For How Long: The life of the original tread. What SEARS Will Do: In exchange for the tire, replace it, charging only the proportion of current price that represents tread used.
 
 TREAD-WEAR OUT AND ROAD HAZARD GUARANTEE
 
 30
 Guaranteed Against: Tread wear out and all failures of the tire resulting from road hazards. For How Long: 40,000 miles.
 
 
 31
 What SEARS Will Do: Repair nail punctures at no charge. In the case of failures or tread-wear out, at SEARS option, in exchange for the tire, replace it, or give you a refund, charging in either case only the proportion of current price that represents mileage used.ADJUSTING. . . .
 
 
 32
 SEARS, ROEBUCK AND CO."
 
 
 33
 Mrs. Westerman testified that she knew the tire pressure recommendations were important and kept the owner's manual in her glove compartment. She also indicated the tire pressures were checked more often than every three months.
 
 
 34
 In June, 1972, the three Westermans left for their summer vacation in the Chevrolet. Before leaving Miami the car was serviced at their Chevrolet dealer and Mrs. Westerman took it to Sears where the tires were looked at and a car top luggage rack was purchased. Mrs. Westerman testified Sears told her, "You have plenty of tread left."
 
 
 35
 On July 2, 1972, five days after leaving Miami, the accident occurred. At about 1:00 P.M., while driving west on I-20 headed towards Dallas, the car began to shake and Mrs. Westerman stated she attempted to "ride it out" by going straight ahead. She testified she thought there was a drop off on the right side of the highway and traffic to the right and slightly behind her. Her son, David, testified something flew up and hit the back of the window and he heard a noise before the black material flew up. The car began pulling to the left, went across the median and into the path of eastbound traffic. A car traveling east collided with the Westerman car, tore off the right door, killed Mr. Westerman and injured Mrs. Westerman and David.
 
 
 36
 Upon inspection in Canton, Texas, where the vehicle was towed, the odometer indicated the car had traveled 46,600 miles and the left rear tire was "blown out and exploded."
 
 
 37
 There was conflicting testimony as to the cause of the blow-out. An examination of the left rear tire after the accident showed that pieces of it had "chunked" off and that the tread had separated from the shoulder. The plaintiff's expert testified that a manufacturing defect caused the separation; that is, when the tire was built "the two belts were not placed concentrically around the tire from one side to the other." This caused unevenness and internal stress which caused heat and the separation. The defendants' experts both testified that the tire failure was caused by misuse in driving the tire greatly underinflated for a long period of time.
 
 I. CHOICE OF LAW
 
 38
 In an action in federal court under diversity jurisdiction the substantive law of the forum state (Florida) including its choice of law rules must be applied. Klaxon v. Stentor Elec. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 39
 Plaintiff filed causes of action in strict liability and breach of express and implied warranty.[2] The Supreme Court of Florida has recognized that:
 
 
 40
 " . . . there are two parallel but independent bodies of products liability law. One, strict liability, is an action in tort; the other, implied warranty, is an action in contract."
 
 
 41
 West v. Caterpillar Tractor Company, 336 So.2d 80, 88 (Fla.1976).
 
 
 42
 The Florida choice of law rule with respect to tort (strict liability) actions is " . . . the lex loci delecto governs the action" Ganem v. Ganem, 269 So.2d 740, 746 (Fla.Dist.Ct.App.1972). That is, the cause of action arises at the place where defendant's conduct causes the injurious effect. The injury in this case occurred in Texas therefore the right of action is governed by Texas' wrongful death act[3] and the theory of recovery is Texas' interpretation of the doctrine of strict liability.
 
 
 43
 In an action based on the Uniform Commercial Code's contract actions[4] for breach of express and implied warranty the choice of law rule is set forth in the statute as follows:
 
 
 44
 (1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this code applies to transactions bearing an appropriate relation to this state.[5]
 
 
 45
 The significant part of the transaction in question occurred in Florida. Plaintiffs reside in Florida and the sale, service and the vast majority of use of the tire occurred in Florida. We find, therefore, that the cause of action arose in Florida and plaintiff's right of action is guaranteed by the Florida Wrongful Death Act[6] with the theory of recovery governed by Florida's interpretation of the Uniform Commercial Code's actions for breach of express and implied warranties.[7]
 
 
 46
 In effect, we are modifying the decision of the district court. We are allowing recovery by the plaintiff under the Texas elements of damages for wrongful death on the strict liability claim. We are also allowing plaintiff to recover under the Florida Wrongful Death Act's elements of damages on the breach of warranty claim. Plaintiff can recover the amount awarded under each element. However, when an element of damage of these wrongful death acts is duplicated or overlaps, plaintiff can recover an award for that damage element only once. The law does not sanction double recoveries. As a result, the amount of recovery in this case should be $951,510 (the second total above).
 
 STRICT LIABILITY
 
 47
 In 1967, Texas extended the tort theory of strict liability set forth in Section 402A of the American Law Institute's Restatement of the Law of Torts (2nd Ed.) in McKisson v. Sales Affiliates Inc., 416 S.W.2d 787 (Tex.1967), to defective products which cause physical harm to persons. Section 402A reads as follows:
 
 
 48
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 
 
 49
 (a) the seller is engaged in the business of selling such a product, and
 
 
 50
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 
 
 51
 (2) The rule stated in Subsection (1) applies although
 
 
 52
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 
 
 53
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
 
 
 54
 The Texas courts have also followed the Restatement's note on seller's or manufacturer's duty to warn. In Ford Motor Company v. Russell & Smith Ford Company, 474 S.W.2d 549 (Tex.Ct.App.1971), the court stated:"A product is not in a defective condition when it is safe for normal handling and consumption. Where, however, the seller has reason to anticipate that danger may result from a particular use, he may be required to give adequate warning of the danger, and a product sold under such circumstances without such warning is in a defective condition."
 
 
 55
 Ford, supra, p. 557.
 
 
 56
 The Supreme Court of Texas has rejected contributory negligence as a defense to strict liability in tort. The Court does not distinguish between " . . . the failure to discover or foresee dangers which the ordinarily careful person would have discovered or foreseen . . . " and " . . . negligent conduct after discovery of the danger and in the use of the product . . . " Henderson v. Ford Motor Company, 519 S.W.2d 87, 89 (Tex.1974).
 
 
 57
 Assumption of the risk is a proper defense to an action in strict liability. Henderson, 519 S.W.2d 87, 90 (Tex.1974). In determining whether an issue of assumption of the risk was raised by the evidence we must decide whether the injured party voluntarily exposed himself to the risk with knowledge and appreciation of the danger.
 
 
 58
 Recently the Supreme Court of Texas has explained Texas' application of "misuse" of a product as a defense. In General Motors Corp. v. Hopkins, 548 S.W.2d 344 (Tex.1977), the court stated:
 
 
 59
 " . . . product liability was never intended to take the place of insurance, and we see no justification for making the supplier reimburse the plaintiff for that portion of his own damages as he caused by a use of the product which the supplier would not have foreseen and which use the plaintiff should have foreseen would create or increase the attendant danger. Reduction of the plaintiff's recovery should be ordered where the misuse is a concurring proximate cause of the damaging event.
 
 
 60
 " . . . contentions by the supplier relative to unforeseeable misuse of the product by the consumer usually bear upon the primary issues of defect and/or cause-in-fact of the damaging event. Where the supplier is unsuccessful in the contentions on those issues, he may interpose an affirmative defense and attempt to prove that the consumer plaintiff altered or misused the product in an unforeseen manner, that the misuse was the proximate cause of the damaging event, and that the misuse contributed to the cause of the event by a certain percent or fraction of the total contribution as between the product defect and the misuse."
 
 
 61
 General Motors Corp. v. Hopkins, 548 S.W.2d at 351. The court also provided that the harm caused by the misuse must be reasonably foreseeable to the user.
 
 BREACH OF WARRANTY
 
 62
 The Uniform Commercial Code became effective in Florida in 1967. The sections providing for express warranties[8] and implied warranties[9] have been discussed numerous times by the courts of Florida and are not at issue here.
 
 
 63
 However, recently in West v. Caterpillar Tractor Company, Inc., 336 So.2d 80 (Fla.1976), the Florida Supreme Court clarified the available defenses to actions for breach of warranty. The court indicated that even though breach of warranty is a contract action it retains certain points from tort law. In particular contributory negligence is an available defense:
 
 
 64
 "Unreasonable exposure to a known and appreciated risk should bar recovery in an action based upon implied warranty just as it bars recovery in negligence. However, it is unreasonable to require the noncommercial consumer to make any sort of detailed or expert inspection. If the injured person's conduct is a proximate cause of the injuries, the defendant would have the right to a charge on comparative negligence in an action for breach of implied warranty. If the injured person failed to use that degree of care which a reasonably careful person would use under like circumstances then he is guilty of some negligence. If this negligence was a proximate contributing cause of the injuries, the defendant would be entitled to raise the defense of contributory or comparative negligence. In other words, lack of ordinary due care could constitute such a defense."
 
 
 65
 West v. Caterpillar Tractor Co., 336 So.2d at 92.
 
 
 66
 In Power Ski of Florida, Inc. v. Allied Chemical Corp., 188 So.2d 13 (Fla.Dist.Ct.App.1966), the court indicated that misuse of a product was an important issue in breach of warranty cases. Since Power Ski, no other Florida opinion has discussed "misuse" and its application to breach of warranty cases.
 
 II. DUTY TO WARN INSTRUCTION
 
 67
 Appellant-Sears objected to Judge Eaton's instruction to the jury on the duty to warn.[10] Of the theories advanced by plaintiff at the trial, one was that although the owner's manual warned of the dangers of overinflation of the tire, there was inadequate or no warning of the dangers of underinflation. The manual even indicated the tires would appear underinflated when properly inflated.
 
 
 68
 An instruction on the duty to warn is proper under Texas' doctrine of strict liability when there is evidence to support it. See Ford Motor Co. v. Russell & Smith Ford Co., supra. In this case there was sufficient evidence to submit this theory to the jury. Its applicability is a question for the jury to determine and Judge Eaton did not err in so instructing the jury.
 
 III. DEFENSES
 
 69
 Appellant submits that the trial court erred in striking its strict liability defense of assumption of the risk and the warranty defenses of contributory negligence, assumption of the risk and product misuse.
 
 
 70
 The trial judge properly struck the strict liability defense of assumption of the risk and the warranty defenses of contributory negligence and assumption of the risk[11] based on his finding there was no credible evidence to support them.[12]
 
 
 71
 Misuse is properly a defense to both strict liability and breach of warranty. Appellant's brief is not clear whether it is raising misuse as a defense to just breach of warranty or to both theories. In either case Sears did not request a jury instruction on misuse. Rather, it requested a special interrogatory to submit to the jury which was denied.[13] This interrogatory indicates appellant's intent to rely on the proposition that plaintiff's failure to use the tire in the intended manner was the proximate cause of the injuries and that plaintiffs had the burden of proof. However, Judge Eaton instructed the jury as follows:
 
 
 72
 "The plaintiff in order to prevail must show by the entire evidence being considered, the greater weight of the evidence, that (the tire) was not so fit, that the breach proximately caused injury or damage and plaintiff must also show by consideration of all of the evidence, that the product, the tire, was being used in the intended manner or another way of saying it, that the tire was being used generally in the manner in which it was intended to be used." (R. 1259)
 
 
 73
 Appellant did not raise "misuse" as an affirmative defense in its requests for instructions and special interrogatories. Its requests and consequently its objections were limited to misuse as a proximate cause of the injury. This instruction was given. Appellant's contention that the trial judge erred in not instructing the jury on "misuse" as an affirmative defense to either strict liability or breach of warranty cannot be considered because it was not requested. See F.R.Civ.P. 51. Bissett v. Ply-Gem Industries, Inc., 533 F.2d 142, 145 (5th Cir. 1976).
 
 IV. NEW TRIAL
 
 74
 Appellant-Sears contends it is entitled to a new trial on both liability and damages under Edwards v. Sears, Roebuck and Company, 512 F.2d 276 (5th Cir. 1975). In Edwards, plaintiff's counsel made deliberately prejudicial and inflammatory statements to the jury during closing argument which went beyond that accepted by any court and the trial judge made an express finding of prejudice. However, instead of granting a new trial as to both liability and damages, he granted only a 50% remittitur. This court reversed and remanded for a new trial on both liability and damages. But Edwards stated:
 
 
 75
 "(i)f the passion, prejudice, caprice, undue sympathy, arbitrariness or more taints only the damage award and not the liability assessment, the proper response is a remittitur or a new trial addressed to damages alone."
 
 
 76
 Edwards, 512 F.2d at 282.
 
 
 77
 The allegations of prejudice in this case stem from a statement made by a juror, overheard by one of the parties, and the fact that the jury returned the verdict on liability for plaintiff in fifteen minutes. Upon learning of the remark made by the juror which concerned the lack of warnings on underinflation by Sears, Judge Eaton questioned the jury and instructed them again of their duty not to discuss the case before time for deliberation. Judge Eatonfound no prejudice and thereafter properly proceeded with the trial. We do not find in this case the type of prejudice that permeated Edwards liability trial. The denial of a new trial was proper. Judge Eaton's later remittitur of the damages was the proper remedy in this case against damage awards he felt were "grossly excessive, shocking to the court's conscience, and the result of improper motives, or a failure to follow the Court's instructions." (R. 790).
 
 V. REMITTITURS
 
 78
 The cross appeal relates solely to the remittiturs ordered by Judge Eaton and accepted under protest by plaintiff. The Supreme Court recently held:
 
 
 79
 " . . . In order to clarify whatever uncertainty might exist, we now reaffirm the longstanding rule that a plaintiff in federal court whether prosecuting a state or federal cause of action, may not appeal from a remittitur order he has accepted."
 
 
 80
 Donovan v. Penn Shipping Co., Inc., 429 U.S. 648, 650, 97 S.Ct. 835, 837, 51 L.Ed.2d 112, 114 (1977).
 
 
 81
 In Donovan, as here, the plaintiff accepted the remittitur "under protest" and sought to reserve his right to appeal. Under Donovan we find that the acceptance under protest of the granting of the remittitur does not reserve the right to appeal and Judge Eaton's order is affirmed.
 
 
 82
 On the basis of the foregoing we affirm the judgment of the district court and modify the award of damages to $951,510.
 
 GODBOLD, Circuit Judge, special opinion:
 
 83
 I think we have come out at the right place in this extremely complex case, and I concur. I write with respect to only one point. Judge Fay's opinion sustains striking the defense of contributory negligence on the ground of insufficiency of evidence. I think there was sufficient evidence of operation of the tire when underinflated to submit the contributory negligence issue to the jury. This was error without injury, however, because the issue of underinflation was submitted to the jury in the context of proximate cause and resolved against Sears.
 
 
 
 [1]
 This Count was remanded to the state court after the damages trial for the damages sustained failed to meet the jurisdictional amount
 
 
 [2]
 A count in negligence was also filed but was dismissed and is not at issue here
 
 
 [3]
 Tex.Rev.Civ.Stat.Ann. Art. 4671
 
 
 [4]
 Florida courts have consistently held that the choice of law rule in cases involving contracts not governed by the UCC is:
 " . . . the nature, validity and interpretation of contracts, are to be governed by the lex loci of the country (state) where the contracts are made or are to be performed; but the remedies are to be governed by the lex fori." (Citation omitted)
 Goodman v. Olsen, 305 So.2d 753, 755 (Fla.1974) cert. den. 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58.
 
 
 [5]
 Fla.Stat.Ann. § 671.1-105(1)
 
 
 [6]
 Fla.Stat.Ann. § 768.19
 
 
 [7]
 Hopkins v. Lockheed Aircraft Corporation, 201 So.2d 743 (Fla.1967) although cited by both parties, is partially inapplicable in this case. Hopkins involved the Wrongful Death Act prior to its amendment in 1972 wherein the death had to have occurred within Florida before the right of action existed in Florida. When amended the legislature deleted the words "in this state" which would allow an action under the appropriate facts when the death occurred outside Florida
 Hopkins does provide for the law of Illinois to apply for another reason. Under the Florida choice of law rule in the UCC, Illinois, under the facts in Hopkins, bears the most reasonable relationship to the cause of action for breach of warranty.
 
 
 [8]
 Fla.Stat. 672.2-313
 (1) Express warranties by the seller are created as follows:
 (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
 (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
 (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
 (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.
 
 
 [9]
 Fla.Stat. 672.2-314
 (1) Unless excluded or modified (§ 672.2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
 (2) Goods to be merchantable must be at least such as:
 (a) Pass without objection in the trade under the contract description; and
 (b) In the case of fungible goods, are of fair average quality within the description; and
 (c) Are fit for the ordinary purposes for which such goods are used; and
 (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
 (e) Are adequately contained, packaged, and labeled as the agreement may require; and
 (f) Conform to the promises or affirmations of fact made on the container or label if any.
 (3) Unless excluded or modified (§ 672.2-316) other implied warranties may arise from course of dealing or usage of trade.
 
 
 [10]
 "A seller who has reason to believe that danger may result from a particular use of his product must provide adequate warning of the danger in order that the product's potential for harm may be reduced. Failure to give such a warning when required will itself present a defect in the product and will, without more, cause the product to be unreasonably dangerous as marketed." (Transcript of trial on liability p. 1252.)
 
 
 [11]
 Assumption of the risk is not specifically named as a defense to breach of warranty but West indicates that "unreasonable exposure to a known and appreciated risk should bar recovery."
 
 
 [12]
 Appellant's suggestion that Mrs. Westerman attempted to make a U-turn in the middle of the highway to return to a service station is incredible and was properly discounted by Judge Eaton
 
 
 [13]
 "Do you find that the plaintiff, Joan Westerman, or her husband used or operated the tire involved in this accident in a manner other than its intended use and that such misuse of the tire proximately caused injury to the plaintiffs?"