784 F.2d 600
 42 UCC Rep.Serv. 1614
 Don L. PRICE, Administrator of the Estate of Lee Allan
Price, Deceased, Plaintiff-Appellant,
v.
LITTON SYSTEMS, INC., Defendant,
International Telephone and Telegraph Corporation,
Defendants-Appellees.
Yuson DONALDSON, Administrator of the Estate of Richard
Doyle Donaldson, Deceased, Plaintiff-Appellant,
v.
LITTON SYSTEMS, INC., Defendant,
International Telephone and Telegraph Corporation,
Defendants-Appellees.
 No. 85-4004.
 United States Court of Appeals,
Fifth Circuit.
 March 7, 1986.
 
 Wayne E. Ferrell, Jr., Ferrell & Hubbard, Jackson, Miss., Nomberg & McCabe, Daleville, Ala., for plaintiffs-appellants.
 Jack J. Hall, Joseph W. Buffington, McDaniel, Hall, Parsons, Birmingham, Ala., John M. Roach, Paul M. Neville, Roach, Dorizas & Neville, Jackson, Miss., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before GEE and JOHNSON, Circuit Judges, and FISHER*, District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 Yusun Donaldson, administratrix of the estate of Richard Doyle Donaldson, and Don L. Price, administrator of the estate of Lee Allan Price, appeal from the district court's grant of summary judgment in favor of the defendant, International Telephone and Telegraph Corporation ("ITT"). On appeal, Donaldson and Price argue (1) that the district court erred in applying Alabama substantive law in this diversity action, (2) that the district court erred in applying the two-year statute of limitations contained in the Alabama wrongful death statute, and (3) that the district court erroneously failed to apply a separate conflict of laws analysis to the breach of warranty claims in this action. This Court affirms the district court's application of Alabama substantive law to the negligence and strict liability in tort claims in this action and their dismissal under the Alabama two year limitations period. The district court, however, erroneously failed to apply a separate conflict of laws analysis to the breach of warranty claims presented. This Court remands this case for that determination.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 On July 14, 1978, Richard Doyle Donaldson, an instructor pilot, and Lee Allan Price, a warrant officer, were members of the flight crew of a helicopter participating in a night vision goggles training mission at a training site associated with Fort Rucker, Alabama. All crew members were wearing night vision goggles manufactured by ITT.[1] The helicopter crashed killing all aboard. The administrators of the estates of Price and Donaldson contend that the helicopter crashed as a direct result of defects in the night vision goggles and the night vision image tubes, both of which were manufactured by ITT.
 
 
 3
 Yusun Donaldson, administratrix of the estate of Richard Doyle Donaldson, and Don L. Price, administrator of the estate of Lee Allan Price, brought separate wrongful death actions to recover for the deaths of their decedents. Both complaints were filed in Mississippi state district court and both complaints named Litton Systems, Inc. and ITT as defendants. The complaints alleged separate counts of breach of express warranty, breach of implied warranty, negligence, and strict liability in tort for the design, manufacture and sale of a defective product. The complaints were filed pursuant to the Mississippi wrongful death statute, Miss.Code Ann. Sec. 11-7-13 (1972).
 
 
 4
 Litton and ITT removed both actions to federal district court based on diversity of citizenship and amount in controversy. Since both decedents died in the same helicopter crash, and since both complaints alleged the same theories of recovery, the actions were consolidated for purposes of trial.
 
 
 5
 Both Litton and ITT moved for summary judgment on the ground that Alabama substantive law governed the wrongful death actions. ITT and Litton contended that Alabama treated the limitations period contained in the Alabama wrongful death statute as part of the substantive right to recovery. According to the defendants, Mississippi would apply the Alabama two year limitations period and the plaintiffs' claims would be time barred. Over the plaintiffs' opposition, the district court granted summary judgment in favor of the defendants, determining that Alabama substantive law, including the two year limitations period in the Alabama wrongful death statute, governed the action. Price v. Litton Systems, Inc., 607 F.Supp. 30 (S.D.Miss.1984). Price and Donaldson appeal only from the judgment in favor of ITT.[2]
 
 
 6
 This Court concludes that the district court properly determined that Alabama law governed the negligence and strict liability in tort claims in this action. The district court, however, should have conducted a separate inquiry to determine which state's law governed the breach of warranty claims. Consequently, the judgment of the district court is affirmed in part, vacated in part, and the case is remanded for further consideration in light of this opinion.
 
 II. DISCUSSION
 A. The Basic Principles
 
 7
 In this diversity action, this Court is bound to apply the law of the forum state, including that state's conflict of laws rules. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In this case, therefore, this Court applies Mississippi conflict of laws rules.
 
 
 8
 The parties to this action agree that the conflict of laws decision by the Mississippi Supreme Court in Mitchell v. Craft, 211 So.2d 509 (Miss.1968), provides this Court's starting point. The parties disagree, however, on what outcome properly ensues from application of the "center of gravity" test enunciated in Mitchell. In Mitchell, which was also a wrongful death action, the Mississippi Supreme Court adopted the "center of gravity" test or the "most substantial contacts" rule as articulated in the Restatement (Second) of Conflict of Laws.[3] That court quoted with approval sections 175, 145 and 6 of the Restatement.
 
 
 9
 Section 175 provides the basic rule for wrongful death actions:
 
 
 10
 Sec. 175. Right of Action for Death.
 
 
 11
 In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.
 
 
 12
 Mitchell, 211 So.2d at 515 (emphasis in Mitchell ).
 
 
 13
 In Mitchell, liability was predicated on a negligence theory. Thus, the Mississippi Supreme Court also relied on section 245, which states the general rule in tort cases:
 
 
 14
 Sec. 145. The General Principle.
 
 
 15
 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in Sec. 6.
 
 
 16
 (2) Contacts to be taken into account in applying the principles of Sec. 6 to determine the law applicable to an issue include:
 
 
 17
 (a) the place where the injury occurred,
 
 
 18
 (b) the place where the conduct causing the injury occurred,
 
 
 19
 (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
 
 
 20
 (d) the place where the relationship, if any, between the parties is centered.
 
 
 21
 Mitchell, 211 So.2d at 515.
 
 
 22
 The contacts articulated in section 145 are to be weighed according to the principles set forth in section 6, which provide basic policy considerations to aid a court in determining the appropriate law to be applied to any particular issue:
 
 Sec. 6. Choice of Law Principles:
 
 23
 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 
 
 24
 (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
 
 
 25
 (a) the needs of the interstate and international systems,
 
 
 26
 (b) the relevant policies of the forum,
 
 
 27
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 
 
 28
 (d) the protection of justified expectations,
 
 
 29
 (e) the basic policies underlying the particular field of law,
 
 
 30
 (f) certainty, predictability and uniformity of result, and
 
 
 31
 (g) ease in the determination and application of the law to be applied.
 
 
 32
 Mitchell, 211 So.2d at 516.
 
 B. The Tort Claims
 
 33
 It is this framework that this Court must apply in determining the appropriate law to be applied in the instant case. See Davis v. National Gypsum Co., 743 F.2d 1132 (5th Cir.1984); Ramsay v. Boeing Co., 432 F.2d 592 (5th Cir.1970). Initially, however, this Court must identify those states having an interest in this litigation and then isolate those contacts that are relevant to the present inquiry.
 
 
 34
 At least six states have contacts with this litigation. ITT is incorporated in Delaware, and has its principal place of business in New York.[4] The night vision goggles and night vision image tubes were manufactured at an ITT facility in Virginia. They were designed, however, at an ITT facility in California. The United States Army may have negotiated the contract to purchase these ITT products in Virginia, New Jersey, or New York, but it is undisputed that the Army and ITT executed the contract in New Jersey. The Army took delivery of the products in California. The night vision goggles were then distributed by the army to its various bases.
 
 
 35
 The accident occurred in Alabama on a training mission not scheduled to go beyond the borders of Alabama. Prior to the accident, both decedents, Donaldson and Price, were stationed at Fort Rucker in Alabama. Moreover, Yusun Donaldson also made her residence in Alabama and was still an Alabama resident at the time this complaint was filed. Yusun Donaldson, however, presently makes her permanent residence in Texas, and Texas was Richard Doyle Donaldson's permanent domicile. Don L. Price is a resident of Iowa, and Iowa was the permanent domicile of Lee Allan Price prior to active duty.
 
 
 36
 Based on these contacts, Yusun Donaldson contends that the laws of California, Virginia, New Jersey or Texas should be applied in her case. Likewise, Don L. Price contends that California, Virginia, New Jersey or Iowa law should govern his action. Both Donaldson and Price contend that any one of those enumerated states has a more substantial relationship with this litigation than does Alabama.
 
 
 37
 This Court holds that the district court properly applied Alabama law to the negligence and strict liability claims asserted in this case. Section 145 identifies four contacts that are of primary importance in determining which state's law should govern a tort action. Two of those factors point to Alabama. First, Alabama is the place of the injury. Second, Alabama is the center of the relationship of the parties. In fact, Alabama is the only location where the decedents came in contact with the products of the defendant. No other place conceivably could be the center of the parties' relationship. The place of the wrongful conduct is California if the plaintiffs demonstrate a design defect, or Virginia if the plaintiffs demonstrate a manufacturing defect. Finally Texas, as the residence of the plaintiff Yusun Donaldson and the permanent domicile of the decedent Donaldson, Iowa, as the residence of the plaintiff Don L. Price and the permanent domicile of the decedent Price, and Delaware and New York, as the place of incorporation and principal place of business of ITT, respectively, satisfy the last inquiry.
 
 
 38
 Mitchell instructs this Court to weigh these factors according to the principles articulated in section 6 of the Restatement. This weighing, however, is not without guidance. In particular, this Court recently decided a case factually similar to the case at bar. In Davis v. National Gypsum Co., 743 F.2d 1132 (5th Cir.1984), this Court was presented with the following situation. The decedent, Garner, was a permanent domicilliary of Mississippi stationed at Fort Carson, Colorado. Garner was killed when a mortar shell manufactured by National Gypsum Company prematurely exploded during Army training exercises at Fort Carson. A wrongful death action was filed alleging that National Gypsum was liable under a products liability theory of recovery.
 
 
 39
 This Court summarized the relevant factors as follows:
 
 
 40
 In this case the only contact favoring application of Mississippi law is the residence of the decedent and [his mother, the plaintiff]. The injury occurred in Colorado, and the slight relationship of the parties was centered in Colorado. The defective mortar round was apparently manufactured in Kansas, and National Gypsum's place of incorporation and principal place of business are Delaware and Texas, respectively. Maymon Garner was stationed in Colorado at the time of his death.... We therefore hold that under Mississippi conflict of laws principles, Colorado has a more substantial relationship to this action than does Mississippi.
 
 
 41
 743 F.2d at 1134 (citations omitted).
 
 
 42
 This Court recognizes that the factors articulated in section 145 are to be given the weight appropriate in each case and that the analysis involves more than "counting contacts." Mitchell, 211 So.2d at 515. Nevertheless, given that Alabama was the place of the injury, the center of the relationship of the parties, and the place of residence (albeit temporary) of the decedents at the time of the accident, we conclude that none of the other interested states has a "more significant relationship to the occurrence and the parties" than does Alabama, the place of the injury. See Mitchell, 211 So.2d at 516 (emphasis added). Consequently, the district court correctly concluded that Alabama law governed the negligence claim in this action. Likewise, given that Davis is itself a products liability case, the strict liability in tort claim is likewise governed by Alabama substantive law.
 
 
 43
 Price and Donaldson contend that this Court should discount the place of the injury, here Alabama, because the place of injury was merely fortuitous. See Vick v. Cochran, 316 So.2d 242, 246 (Miss.1975). This Court does not view the Alabama place of injury as merely fortuitous. The decedents were stationed at Fort Rucker in Alabama and the fatal flight was not scheduled to travel beyond the borders of that state. This case, therefore, is unlike those cases involving automobile trips or air travel extending over several states where the accident occurs in some state other than the state of origin or the state of destination.
 
 
 44
 Donaldson and Price contend that even if Alabama substantive law governs this action, the Mississippi statute of limitations applies because statutes of limitations are procedural and Mississippi applies its procedural rules in cases of this type. As a general rule, although Mississippi applies the substantive law of the state having the most significant relationship to the litigation, it applies its own laws in matters of procedure. Davis, 743 F.2d at 1134. In most instances, Mississippi follows the traditional rule that a statute of limitations is procedural. Ramsay, 432 F.2d at 596. Mississippi, however, has long recognized exceptions to this rule. Id. An exception to the general rule exists in cases where the limitations period is considered to be part of the substantive law because it is "built in" or "in the same enactment" as the statute which creates the right to the action. See Bethlehem Steel Co. v. Payne, 183 So.2d 912 (Miss.1966); Davis, 743 F.2d at 1134; Ramsay, 432 F.2d at 597.
 
 
 45
 "Mississippi honors the construction given a statute by the courts of the state whose legislature enacted it." Davis, 743 F.2d at 1134; Ramsay, 432 F.2d at 599. Alabama treats its two year limitation period as substantive. "Th[e] [Alabama] two year period is part of the substantive cause of action and is not to be treated as a statute of limitations." Downtown Nursing Home, Inc. v. Pool, 375 So.2d 465, 466 (Ala.1979), cert. denied, 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). Consequently, this Court determines that Mississippi would conclude that the Alabama two year limitations period is substantive and that it applies in this action to the negligence and strict liability in tort claims asserted by Price and Donaldson. Because this action was not commenced until more than five years after the deaths of Price and Donaldson, the district court correctly determined that the negligence and strict liability in tort claims in this action were time-barred and correctly entered summary judgment for ITT on those claims.
 
 
 46
 Price and Donaldson further argue that application of the Alabama wrongful death statute and its two year limitations period contravenes Mississippi public policy because Mississippi has expressed a policy to open its doors to litigation of this type by adopting a longer than usual statute of limitations. Price and Donaldson cite McNeal v. Administrator of Estate of McNeal, 254 So.2d 521 (Miss.1971), for the proposition that Mississippi will not apply another state's law that "is contrary to the deeply ingrained and strongly felt public policy of [Mississippi]...." Boardman v. United Services Automobile Association, 470 So.2d 1024, 1031 (Miss.1985).
 
 
 47
 In Boardman, the Mississippi Supreme Court recently elaborated on the public policy exception to its general conflict of laws rules. The Mississippi court noted the fundamental policies underlying Mississippi's comparative negligence rule, Mitchell, 211 So.2d at 513-16, and Mississippi's policy of intrafamily tort immunity, McNeal, 254 So.2d at 524. Consequently, Mississippi refused to enforce another state's contrary policy in each of those two cases. On the other hand, the court in Boardman identified lesser policies that did not bar enforcement of Louisiana highway safety rules when an accident occurred in Louisiana, Fells v. Bowman, 274 So.2d 109, 112-113 (Miss.1973), or enforcement of the Alabama guest passenger statute, Vick, 316 So.2d at 246-47.
 
 
 48
 This Court's review of this recent precedent leads this Court to the conclusion that Mississippi would not view the policy behind its statute of limitations to be so fundamental as to forbid enforcement of another state's substantive limitations period. Any other holding would result in the application of Mississippi's limitation period in every case, a result we do not believe comports with Mississippi precedent.
 
 C. The Warranty Claims
 
 49
 This Court further concludes, however, that the district court erroneously applied the same conflict of laws analysis to the breach of warranty claims as it applied to the tort claims. In Boardman, 470 So.2d at 1031, the Mississippi Supreme Court stated:
 
 
 50
 First, the law of a single state does not necessarily control every issue in a given case. We apply the center of gravity test to each question presented, recognizing that the answer produced in some instances may be that the law of this state applies and on other questions in the same case the substantive law of another state may be enforceable.
 
 
 51
 (emphasis added). See also Fells v. Bowman, 274 So.2d 109, 112 (Miss.1973); Vick v. Cochran, 316 So.2d 242, 246 (Miss.1975).[5]
 
 
 52
 This approach is in accord with the Restatement (Second) of Conflict of Laws. For example, section 175, which governs wrongful death claims generally, states that "the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties...." (first emphasis in original, second emphasis added). Accord Restatement (Second) of Conflicts of Laws Sec. 145, Sec. 188.[6]
 
 
 53
 The question presented to this Court, then, is whether a breach of warranty claim is an issue to which the Mississippi courts would apply a separate conflict of laws analysis. This Court concludes that the Mississippi courts would apply a separate analysis based on its adoption of certain relevant portions of the Uniform Commercial Code ("U.C.C.") governing warranties.
 
 
 54
 Price and Donaldson both asserted counts of breach of express warranties of fitness and merchantability and breach of implied warranties of fitness and merchantability. Record Vol. 1 at 12-15; Record Vol. II at 12-15. The U.C.C. presently provides that recovery for physical injuries is available on a warranty theory to purchasers and certain third party beneficiaries. Three provisions in the U.C.C. make recovery possible. Section 2-715(2)(b) states that "injury to person or property proximately resulting from any breach of warranty" is a type of consequential damage that is recoverable. Mississippi has adopted this provision. Miss.Code Ann. Sec. 75-2-715(2)(b) (1972). The U.C.C. also provides three alternatives, from which a state is to select one, for identifying those nonpurchasers who could recover for breach of a warranty, especially when suffering physical injury. U.C.C. Sec. 2-318. Mississippi has adopted the first of those three alternatives. Miss.Code Ann. Sec. 75-2-318 (1972).[7] Finally, the U.C.C. provides that a "[l]imitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable...." U.C.C. Sec. 2-719(3) (1972). Mississippi has adopted this provision. Miss.Code Ann. Sec. 75-2-719(3). See W. Page Keeton, D. Dobbs, R. Keeton & D. Owen, PROSSER AND KEETON ON TORTS Sec. 98, at 693-94 (1984).
 
 
 55
 A claim based on a theory of breach of express or implied warranty, therefore, arises in large part under the U.C.C. and not under general tort theory.[8] Mississippi has adopted a specific conflict of laws rule for warranty claims, the emphasized portion of which is not generally found within the U.C.C. It provides:
 
 
 56
 (1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement, this code applies to transactions bearing an appropriate relation to this state. Provided, however, the law of the State of Mississippi shall always govern the rights and duties of the parties in regard to ... the necessity for privity of contract to maintain a civil action for breach of implied warranties of merchantability or fitness notwithstanding any agreement by the parties that the laws of some other state or nation shall govern the rights and duties of the parties.
 
 
 57
 Miss.Code Ann. Sec. 75-1-105 (1972) (emphasis added).
 
 
 58
 Restatement (Second) of Conflict of Laws Sec. 6 states that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Thus, at first glance, it would appear that Mississippi law governs the warranty claims in this action. Nevertheless, Mississippi's sole contact with this litigation is that it is the forum state. On remand, the district court is to address the constitutionality of applying Mississippi law to this case. See, e.g., Allstate Insurance Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); Home Insurance Co. v. Dick, 281 U.S. 397, 410, 50 S.Ct. 338, 342, 74 L.Ed. 926 (1930).
 
 
 59
 Regardless of the specific applicability of the Mississippi U.C.C. conflict of laws rule, the district court should have separately addressed which state's law should govern the breach of warranty claims. See, e.g., Westerman v. Sears, Roebuck and Company, 577 F.2d 873 (5th Cir.1978) (Texas wrongful death statute held to govern negligence and strict liability in tort claims; Florida wrongful death statute held to govern breach of warranty claims); Whitaker v. Harvell-Kilgore Corp., 418 F.2d 1010 (5th Cir.1969)[9] (court applied the place of injury rule to the tort claims and U.C.C. Sec. 1-105 choice of law rule to warranty claims; court held Georgia law governed both sets of claims).[10]
 
 
 60
 ITT asserts that it is error to apply a separate analysis to the breach of warranty claims because this is a wrongful death action governed by section 175 and Mitchell. Under that analysis, ITT argues, Alabama law would apply regardless of the theory asserted as the basis for recovery. This Court disagrees. First, Mitchell involved only a tort claim; analysis of the conflict of laws issue in light of the general rules of tort was therefore clearly appropriate. That application in Mitchell, however, is not dispositive of claims under the U.C.C. or general contract law. Second, section 175 itself authorizes the issue by issue approach encouraged throughout the Restatement (Second) of Conflict of Laws. Finally, Davis involved products liability claims, but the opinion does not apprise this Court of whether breach of warranty claims were presented. Moreover, the specific question presented to this Court does not appear to have been briefed or argued in that case. The issue is squarely presented in the instant case, and this Court holds that a separate conflict of laws analysis should have been applied to the breach of warranty claims.
 
 
 61
 ITT also makes several arguments concerning the merits of the breach of warranty claims asserted by Price and Donaldson. ITT argues that the statute of limitations has run in each state that might have an interest in this litigation. Moreover, ITT asserts that the requisite privity for asserting such claims is lacking under each state's law. These arguments were not presented to the district court and the district court has yet to have an opportunity to address these issues. It may do so on remand.
 
 
 62
 We remand this case to the district court for the initial determination of which state's law governs the breach of warranty claims. This Court declines to decide the question in the first instance. If ITT's arguments on the merits are supported, the district court may dispose of this case on those grounds. The parties are to be allowed to submit additional briefs and develop this area of law, particularly the applicability of the U.C.C. choice of law rule and/or general contract conflicts rules to these warranty claims.[11]
 
 III. CONCLUSION
 
 63
 For the foregoing reasons, the district court's disposition of the negligence and strict liability in tort claims is affirmed. The district court's disposition of the breach of warranty claims is vacated, and the case is remanded for further consideration in light of this opinion.
 
 
 64
 AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
 
 
 
 *
 District Judge of the Eastern District of Texas, sitting by designation
 
 
 [1]
 An observer, who was not a crew member, was wearing night vision goggles manufactured by ITT but which contained an image tube manufactured by Litton Systems, Inc
 
 
 [2]
 After discovery in this case, it was determined that Litton Systems, Inc. had manufactured only one of the image tubes in use on the aircraft. That particular tube was not used by either the pilot or the co-pilot
 
 
 [3]
 Proposed Official Draft, Adopted May 4, 1968. See Ramsay v. Boeing Co., 432 F.2d 592, 596 (5th Cir.1970)
 
 
 [4]
 ITT contends that its principal place of business is in New York, while the plaintiffs-appellants assert that ITT's principal place of business is in Delaware. This Court finds no significance to this factor, and therefore, the discrepancy is immaterial
 
 
 [5]
 In Boardman, the Mississippi Supreme Court applied Nebraska law to determine the proper construction of a contract negotiated, executed, and substantially performed in Nebraska. Nevertheless, the court applied Mississippi law to determine ownership of the vehicle involved in the accident, and indicated that Mississippi law, as the place of injury, would govern any tort claims involved in the action. In Fells, the Mississippi Supreme Court applied Louisiana law to the question of what constituted negligence in the case, but applied Mississippi comparative fault rules to determine who should recover
 
 
 [6]
 The Restatement (Second) of Conflict of Laws encourages issue by issue determination of conflicts questions. "The Restatement, moreover, is issue-oriented; 'relative significance' is to be determined 'with respect to the particular issue.' " E. Scoles & P. Hay, CONFLICT OF LAWS Sec. 2.15, at 40 (1982) (emphasis in original and footnote omitted). Mississippi has clearly adopted this approach. Boardman, 470 F.2d at 1031
 
 
 [7]
 Miss.Code Ann. Sec. 75-2-318 (1972) provides:
 A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.
 In comparison, Miss.Code Ann. Sec. 11-7-20 (Supp.1985) (emphasis added) provides:
 In all causes of action for personal injury or property damage or economic loss brought on account of negligence, strict liability or breach of the warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action.
 The parties have directed this Court no cases, nor has this Court found any cases, construing these two statutory provisions.
 
 
 [8]
 A leading commentator, summarizing the historical warranty foundation for strict liability in tort and noting the overlap between the theories of strict liability in tort and the theories of breach of express and implied warranty, observed:
 This now means that a claimant seeking damages against a merchant seller has three alternative theories available, all of which are often utilized in the same case. These are: (a) negligence in tort, (b) strict liability for breach of a warranty, express or implied, and (c) strict liability in tort.
 A partial solution to the inordinate complexities attributable to the availability of both tort theories and contractual-warranty theories (especially to those who cannot be regarded as either parties to a contract or third-party beneficiaries in a conventional contractual sense) is for the state legislature to amend the three pertinent provisions of the Code so as to limit recovery of consequential damages for breach of a warranty in the sale of a product to intangible financial losses and physical harm to the product itself or tangible things that are made or repaired with the product.
 W. Page Keeton, D. Dobbs, R. Keeton and D. Owen, PROSSER AND KEETON ON TORTS Sec. 98, at 694 (1984). Mississippi has not so limited its version of the U.C.C. If anything, Miss.Code Ann. Sec. 11-7-20 (Supp.1985) broadens coverage under the Mississippi version of the U.C.C.
 
 
 [9]
 But see Whitaker v. Harvell-Kilgore Corp., 424 F.2d 549, 550-51 (5th Cir.1970) (special concurrence on denial of petition for rehearing asserting that U.C.C. Sec. 1-105 applies only when a provision of U.C.C. is dispositive; otherwise a state's general conflict of laws rules apply and result would depend on whether a state characterizes a warranty action for personal injury as founded in tort or contract)
 
 
 [10]
 See also Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339, 345 n. 6 (8th Cir.1983), cert. denied, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984) (court indicated law of Cayman Islands governed tort claims, but law of Iowa probably governed warranty claims asserted in wrongful death action) (dicta); Dahl v. United Technologies Corp., 632 F.2d 1027, 1032 (3d Cir.1980) (in wrongful death action, court recognized that Norwegian law governed tort claims, but Connecticut law governed warranty claims; nevertheless, because plaintiffs' warranty claims were weak, court upheld dismissal on forum non conveniens grounds); Brendle v. General Tire and Rubber Co., 505 F.2d 243 (4th Cir.1974) and 408 F.2d 116 (4th Cir.1969) (Missouri law governed negligence claims, but North Carolina law, particularly U.C.C. Sec. 1-105, governed warranty claims in wrongful death action). See generally Bilancia v. General Motors Corp., 538 F.2d 621 (4th Cir.1976) (application of U.C.C. Sec. 1-105 choice of law rule to warranty claim) (dicta); Aldon Industries, Inc. v. Don Myers & Associates, Inc., 517 F.2d 188 (5th Cir.1975) (application of U.C.C. Sec. 1-105 choice of law rule to warranty claims)
 In both Westerman and Whitaker, this Court noted that each forum state had expressly recognized the tort basis for strict liability in tort claims and the contractual underpinnings of the warranty claims. See Westerman, 577 F.2d at 878; Whitaker, 418 F.2d at 1015. Price and Donaldson assert, without citing supporting authority, that Mississippi would analyze warranty claims under general conflict of laws principles applicable to contracts. See Restatement (Second) Conflict of Laws Sec. 188. The adoption by Mississippi of the portions of the U.C.C. noted in the text of this opinion support the view that a separate analysis is required. However, ITT, on remand, is not foreclosed from pointing out contrary authority to the district court.
 
 
 [11]
 We note, as an aid to the district court, that Alabama has little interest in applying its version of the U.C.C. or its general contract principles to this litigation. The night vision goggles and tubes were not manufactured, designed or sold in Alabama. Moreover, the contract for the purchase of the products was not negotiated, executed or performed in Alabama. Consequently, Alabama has no interest in applying its contract or commercial law to this litigation