928 F.2d 137
 Prod.Liab.Rep.(CCH)P 12,777
James Clayton ALLISON, Carolyn Allison and Tru-Amp
Corporation, Plaintiffs-Appellants,
and
Insurance Company of North America, Intervenor-Appellant,
v.
ITE IMPERIAL CORPORATION, Gould, Ins., et al., Defendants-Appellees.
 No. 90-1132.
 United States Court of Appeals,
Fifth Circuit.
 March 26, 1991.
Rehearing Denied May 24th, 1991.
 
 James W. Nobles, Jr., Jackson, Miss., Malcolm McCune, Nashville, Tenn., Kellis L. Madison, Pearl, Miss., for plaintiffs-appellants.
 Damon S. Gibson, Alben N. Hopkins, Hopkins, Dodson, Wyatt & Crawley, Gulfport, Miss., for intervenor-appellant.
 Robert Miller, James A. Becker, Watkins & Eager, Jackson, Miss., for defendants-appellees.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before RUBIN, SMITH, and BARKSDALE, Circuit Judges.
 BARKSDALE, Circuit Judge:
 
 
 1
 Plaintiffs, James and Carolyn Allison and Tru-Amp Corporation (Tru-Amp), and intervenor, Insurance Company of North America (INA), appeal the district court's summary judgment that Tennessee substantive law (statute of repose) applies to this products liability action, thereby barring their claims. We AFFIRM.
 
 I.
 
 2
 James Allison, a Mississippi resident, was employed by Tru-Amp, a Mississippi corporation. In the course of his employment, Allison was sent to Brentwood, Tennessee, in 1988 to inspect, clean, and test switch equipment at a South Central Bell (Bell) facility, pursuant to a July 1986 contract between Bell and Tru-Amp. After Allison had been working in Brentwood for five days, he and a fellow employee attempted to remove a circuit breaker from a bank of breakers. During the removal, a part fell off the breaker, causing an explosion and electrical fire, by which Allison was injured and the Bell premises damaged.
 
 
 3
 The switchboard and circuit breakers, manufactured in Pennsylvania by ITE Imperial Corp. (ITE), a Pennsylvania corporation, had been sold to a company in Nashville, Tennessee, pursuant to a purchase order dated June 6, 1975. They were installed at the Brentwood facility before September 21, 1976. ITE was subsequently acquired by Gould, Inc., a Delaware corporation owned by Nippon Mining U.S., a division of the Japanese company.
 
 
 4
 After Allison, his wife Carolyn Allison, and Tru-Amp filed suit in Mississippi state court against ITE and Gould, this action was removed to the district court on the basis of diversity jurisdiction. The Allisons asserted claims for personal injury and loss of consortium based on negligence and strict liability; Tru-Amp asserted a subrogation claim for its indemnification of Bell for property repair and lost revenues; and INA intervened, asserting a subrogation claim for payment of worker's compensation benefits to Allison.
 
 
 5
 The district court granted summary judgment for the defendants, holding, as discussed infra, (1) that Tennessee, not Mississippi, law applied and (2) that the statute of repose found in Tennessee's Products Liability Act, Tenn.Code Ann. Sec. 29-28-103 (Supp.1989) (product liability actions against manufacturers must be brought within ten years from the date on which the product was first purchased for use or consumption) barred the action. Allison v. ITE Imperial Corp., 729 F.Supp. 45 (S.D.Miss.1990). Appellants timely appealed.
 
 II.
 
 6
 The material facts are not in dispute. Appellants contend that Mississippi, rather than Tennessee, law applies and that accordingly, their suit is not barred. "Summary judgment is proper when, viewed in the light most favorable to the non-moving party, 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact' " and that the movant is entitled to judgment as a matter of law. Smith v. Xerox Corp., 866 F.2d 135, 137 (5th Cir.1989) (quotation omitted); Fed.R.Civ.P. 56(c). We apply the same standard, de novo, on appeal. Trial v. Atchison, Topeka & Santa Fe R.R., 896 F.2d 120, 122 (5th Cir.1990); see also Walls v. General Motors, Inc., 906 F.2d 143, 145-46 (5th Cir.1990) (reviewing grant of summary judgment on choice of law under the Mississippi "center of gravity" test).
 
 
 7
 Needless to say, a federal court in a diversity case must apply the choice of law rules of the State in which it sits. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). And, as recently held by the United States Supreme Court, we "review de novo a district court's determination of state law." Salve Regina College v. Russell, --- U.S. ----, ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).[1]
 
 
 8
 Although prior to 1968, Mississippi applied the law of the place of injury to tort actions, Mississippi in the oft-discussed Mitchell v. Craft, 211 So.2d 509, 515-16 (Miss.1968), adopted the "center of gravity" or "most significant relationship" test, relying in large part upon the then official draft of the Restatement (Second) Conflict of Laws. Mitchell arose out of a two-car collision in Louisiana, involving Mississippi residents and resulting in two wrongful death actions in Mississippi state court, in which each party pleaded contributory negligence. Mississippi's comparative negligence statute would not bar an injured, but negligent, party's recovery; but Louisiana's common-law doctrine of contributory negligence would. Accordingly, a threshold issue was which State's law applied.
 
 
 9
 Prior to citing the Restatement, the Mitchell court stated the following, which has generated some confusion about the holding in Mitchell, as discussed infra, including note 4:
 
 
 10
 We will assume that a case is to be governed by the law of the forum unless it is expressly shown that a different law applies, and in case of doubt, a court will naturally prefer the laws of its own state. Moreover, a forum state will not favor application of a rule of law repugnant to its own purposes, and forum law should presumptively apply unless it appears that the non-forum contacts are of greater significance.
 
 
 11
 Id. at 512 (emphasis added). In reaching its subsequent holding, the Mississippi Supreme Court first stated that the Restatement "summarizes the rules which we think are applicable to this case" and quoted Secs. 175 ("Right of Action for Death"), 145 ("The General Principle"), 164 ("Contributory Fault") and 6 ("Choice of Law Principles"):
 
 
 12
 Sec. 175. Right of Action for Death.
 
 
 13
 In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.
 
 
 14
 Sec. 145. The General Principle.
 
 
 15
 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in Sec. 6.
 
 
 16
 (2) Contacts to be taken into account in applying the principles of Sec. 6 to determine the law applicable to an issue include:
 
 
 17
 (a) the place where the injury occurred,
 
 
 18
 (b) the place where the conduct causing the injury occurred,
 
 
 19
 (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
 
 
 20
 (d) the place where the relationship, if any, between the parties is centered.
 
 
 21
 These contacts are to be evaluated according to their relative importance with respect to the particular issue.
 
 
 22
 Sec. 164. Contributory Fault.
 
 
 23
 (1) The law selected by application of the rule of Sec. 145 [the same as Sec. 175] determines whether contributory fault on the part of the plaintiff precludes his recovery in whole or in part.
 
 
 24
 (2) The applicable law will usually be the local law of the state where the injury occurred.
 
 
 25
 Sec. 6. Choice of Law Principles.
 
 
 26
 (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 
 
 27
 (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
 
 
 28
 (a) the needs of the interstate and international systems,
 
 
 29
 (b) the relevant policies of the forum,
 
 
 30
 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 
 
 31
 (d) the protection of justified expectations,
 
 
 32
 (e) the basic policies underlying the particular field of law,
 
 
 33
 (f) certainty, predictability and uniformity of result, and
 
 
 34
 (g) ease in the determination and application of the law to be applied.
 
 
 35
 Id. at 515-516 (emphasis and brackets by the court).
 
 Based upon these sections, the court held:
 
 36
 Ordinarily, the local law of a state where the injury occurred will determine the rights and liabilities of the parties, "unless with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied."
 
 
 37
 211 So.2d at 516 (quoting Sec. 175, addressing wrongful death actions) (emphasis by court). And, for the claims in Mitchell, the court next held that Mississippi law applied, because it had "the most substantial relationship to the parties." Id. at 516.[2]
 
 
 38
 Pursuant to Mitchell and its progeny, and primarily basing its decision on a discussion of the factors in Sec. 145, the district court here concluded that the law of Tennessee applied. It found that (1) the injury occurred in Tennessee; (2) the conduct causing injury occurred where the breaker was manufactured--Pennsylvania; (3) the plaintiffs were Mississippi residents, defendant Gould was a Delaware corporation with its principal place of business in Illinois, and its predecessor in interest, ITE, was domiciled in Pennsylvania; and (4) although there was no preexisting relationship between the parties, the center of the relationship was Tennessee. Allison, 729 F.Supp. at 47-48. Concerning the last factor, the district court noted that this court had suggested
 
 
 39
 that perhaps the center of the relationship between the parties in a products case is the state in which the victim came in contact with the products of the Defendant. The plaintiffs assert that Tru-Amp and its employees performed inspection services for Bell in the states of Louisiana, Mississippi and Tennessee, but the record does not disclose whether Tru-Amp or Allison inspected ITE breakers in any state other than Tennessee. Accordingly, an analysis of this factor suggests that Tennessee law should control.
 
 
 40
 Id. at 48 (discussing Price v. Litton Systems, Inc., 784 F.2d 600, 604 (5th Cir.1986)).[3] The district court stated that the factors of Sec. 145 "are to be given the weight appropriate in each case and that the analysis involves more than 'counting contacts' ", id. at 48 (quotation omitted), and concluded:
 
 
 41
 Nevertheless, given that Tennessee was the place of injury and the center of the relationship between the parties and that ... Allison's presence there was far from fortuitous, having worked there for five consecutive days, the Court concludes that no other interested state has a "more significant relationship to the occurrence and the parties" involved in this suit than the State of Tennessee. Accordingly, the substantive law of the State of Tennessee will apply to the Plaintiffs' claims.
 
 
 42
 Id. at 48 (quotation omitted).
 
 
 43
 The court then found that the Tennessee statute of repose was substantive, rather than a procedural statute of limitations. Id. at 49. There were no disputed issues of fact concerning when ITE purchased the breakers and when they were installed--approximately 12 years prior to the accident. Accordingly, the court concluded that the statute barred the plaintiffs' claims, because they had not been brought within ten years from the date on which the product was first purchased for use or consumption. Tenn.Code Ann. Sec. 29-28-103 (Supp.1989). Id.
 
 A.
 
 44
 The appellants contend primarily that the district court erred in its assessment of the relevant contacts, by limiting its analysis to Sec. 145, without considering the Sec. 6 principles delineated in Mitchell. They assert that based on the principles in Sec. 6, the district court erred in not considering the effect of Allison's injury on the Mississippi economy, resulting from the cost of Allison's medical treatment and unpaid doctors' bills; his loss of earning power and consequent decrease of state tax revenue; the cost of the worker's compensation benefits paid to Allison; and the possible cost of providing him other benefits, especially if he is unable to return to full-time employment. They further contend, pursuant to Sec. 6, that Tennessee has little interest in applying its statute of repose to a foreign defendant; that the defendants are qualified to, and do, conduct business in Mississippi; and that those are relevant contacts which should be considered in the choice of law analysis.
 
 
 45
 The district court did not specifically address the considerations listed in Sec. 6. Although the court quoted the section, it did not expressly apply the principles stated there. And, under the express terms of Sec. 145, the contacts articulated in that section are to be considered "in applying the principles of Sec. 6." But according to the Restatement's own language, the categories enumerated in Secs. 6 and 145 are not exclusive and they "defy mechanical application--they are less 'rules of law' than generally-stated guidelines.... Choice of law seeks the state where the contacts are maximized." McDaniel v. Ritter, 556 So.2d 303, 310 (Miss.1989) (en banc) (emphasis added).
 
 
 46
 Moreover, decisions subsequent to Mitchell appear to have given little, if any, actual weight to the policy considerations in Sec. 6. See, e.g., Davis v. National Gypsum Co., 743 F.2d 1132 (5th Cir.1984). While, for example, in Boardman v. United States Auto. Ass'n, 470 So.2d 1024 (Miss.), after certification, 768 F.2d 718 (5th Cir.), cert. denied, 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985), the Mississippi Supreme Court stated that "this Court has expressly approved Restatement Sec. 6 and incorporated it into the law of this state," 470 So.2d at 1032, that court further noted that "[e]valuation and balancing of these factors has proven quite elusive" and that "the factors enumerated in Restatement Sec. 6 will from case to case be given such relative weight as they are entitled, consistent with the general scheme of the center of gravity test." Id. at 1031 and 1032. And, as emphasized above, in its more recent en banc opinion in McDaniel, that court stated that the "choice of law seeks the state where the contacts are maximized."
 
 
 47
 By its express terms, Sec. 6 principles are applied to those States identified through the Sec. 145 analysis. Accordingly, the States to be considered under Sec. 6 must be first identified through application of Sec. 145. In applying Sec. 145, the first factor is the place where the injury occurred--Tennessee. Pursuant to the above quoted holding in Mitchell, the district court found--and we agree--that Tennessee law should apply based on this factor alone, unless another State had a more substantial relationship.[4]
 
 
 48
 The second factor under p 2 of Sec. 145 is the place where the conduct causing the injury occurred. We agree with the district court that an analysis of this factor points to Pennsylvania, because the equipment in issue was manufactured there, at ITE's Philadelphia plant.
 
 
 49
 The third factor is the domicile, residence, nationality, place of incorporation and place of business of the parties. The plaintiffs, including Tru-Amp, are Mississippi residents; Gould is a Delaware corporation, with its principal place of business in Illinois; and ITE, its predecessor, was domiciled in Pennsylvania.
 
 
 50
 The fourth factor is the place where the relationship, "if any", of the parties is centered. As discussed, the district court found that there was no preexisting relationship between the parties, but relying on a Fifth Circuit case, Price, decided that the relationships between the parties in a products liability case is the State where the injured party came in contact with the product of the defendant--Tennessee.[5]
 
 
 51
 The district court found Davis similar to the facts presented here and illustrative as to how the Sec. 145 factors are applied. 729 F.Supp. at 48. In Davis, a Mississippi resident stationed at an Army base in Colorado was killed when a mortar shell exploded prematurely. Davis applied Colorado law, holding that the occurrence of the accident in Colorado was not "clearly fortuitous", because the decedent had been stationed there for nine months at the time of his death. 743 F.2d at 1134. Other cases have followed this reasoning, finding that an assignment to an Army base in another State constituted a temporary change of residence. See Price, 784 F.2d at 604; Crouch, 699 F.Supp. at 590. The district court determined that Allison's presence in Tennessee was not fortuitous, because he had worked there for five consecutive days. Although Allison's presence in Tennessee was not as continuous as that in Davis, we agree that it was not merely fortuitous.
 
 
 52
 Therefore, the law of the place of the injury (Tennessee) will control, unless the Sec. 6 considerations applied to the States identified by our Sec. 145 analysis lead to our concluding that another State has a "more significant relationship." Mitchell, 211 So.2d at 516. Section 6 considerations were examined recently by this court in Hanley, 903 F.2d at 1030, an action filed in Mississippi and arising out of a Louisiana resident being injured by a Mississippi defendant in an automobile accident in Florida. Florida's law differed from Mississippi's regarding liability of a co-owner. The court first examined Mississippi law and determined that the Mississippi Supreme Court had not abandoned the doctrine that the place of injury will control absent a more significant interest of another State. Id. at 1032.
 
 
 53
 The court then discussed the interests of Florida and Mississippi and found that Florida's interests in the outcome were more significant, because
 
 
 54
 [it] has a manifest interest in preserving the integrity and safety of its highway system and preventing the type of injuries which resulted from this tragic accident. Those persons who entered the State of Florida and operate a motor vehicle on its highways are properly subject to the State's owner liability laws.... It would be incongruous for Floridians to be bound by the strict owner liability laws while those individuals who drive into the state and take advantage of Florida's hospitality are fortuitously able to evade the same laws.
 
 
 55
 Id. at 1033.
 
 
 56
 The policy behind Tennessee's statute of repose is found in its preamble, discussed in Mathis v. Eli Lilly & Co., 719 F.2d 134, 139 (6th Cir.1983):
 
 
 57
 WHEREAS, The General Assembly finds and declares that the number of product liability suits and claims for damages and the amount of judgments, settlements and the expense of defending such suits have increased greatly in recent years, and because of these increases the cost of product liability insurance has substantially increased. The effect of increased insurance premiums and increased claims has increased product cost through manufacturers, wholesalers and retailers passing the cost of the premium to the consumer. Further, certain product manufacturers are discouraged from continuing to provide and manufacture such products because of the high cost and possible unavailability of product liability insurance; and
 
 
 58
 WHEREAS, In view of these recent trends and for the purpose of alleviating the adverse effects which these trends are producing, it is necessary to protect the public interest by enacting measures designed to make product liability insurance more readily available at a reasonable cost so that product cost may be lessened to the consumer; and
 
 
 59
 WHEREAS, In enacting this act, it is the purpose of the General Assembly to provide a reasonable time frame within which action may be commenced against manufacturers, and/or sellers while limiting the time to a specific period of time for which product liability insurance premiums can be reasonably and accurately calculated; and to provide other changes to expedite early evaluation and settlement of claims....
 
 
 60
 Id. at 139 (quoting Ch. 703, 1978 Tenn.Pub.Acts 468, 468-69).
 
 
 61
 In Stutts v. Ford Motor Co., 574 F.Supp. 100, 105 (N.D.Tenn.1983), the district court stated that the Tennessee statute of repose
 
 
 62
 seeks to relieve manufacturers and sellers from indefinite exposure to products liability claims and to stem the increasing cost of products liability insurance. The ten-year classification terminates exposure to products liability claims ten years after the original purchase date, thus cutting off claims arising long after the products have left the manufacturer's or seller's hands.
 
 
 63
 The plaintiff in Stutts claimed that the ten-year ceiling failed to limit the cost of products liability insurance. The court noted that the effectiveness of the ceiling in that regard had not been proved, but the legislature had other goals in mind when it enacted the ceiling:
 
 
 64
 Certainly the legislature intended to limit claims that would be difficult to prove due to the difficulty of finding witnesses with knowledge of events of ten years before. While the Act in itself will not effect lower premiums, there is a rational relationship between the Act and the objectives it seeks to attain.
 
 Id. at 105.[6]
 
 65
 In applying the Sec. 6 considerations, we find that Tennessee has a strong interest in limiting a manufacturer's exposure and insuring that products liability actions are brought within a reasonable time frame while evidence is still available. Applying the Tennessee statute of repose will result in Sec. 6 "certainty, predictability and uniformity of result", and promotes important state policies.
 
 
 66
 The Mississippi policies advanced by appellants, such as the effect on the Mississippi economy due to Allison's unpaid medical bills and loss of earning power, are not more compelling, or substantial, than Tennessee's. The policies advanced by appellants are, obviously, very important considerations, their significance being noted, for example, in Mitchell, 211 So.2d at 514 ("[t]his state is especially concerned with the protection of its injured domiciliaries and their families"). However, these factors are not controlling per se. If they were, then obviously, Mississippi would have a different choice of law rule.
 
 
 67
 Accordingly, we agree with the district court that no State, including Mississippi, has a more significant relationship to the occurrence and the parties than Tennessee, the place of the injury. This, however, does not end the inquiry.
 
 B.
 
 68
 We must next determine whether the Tennessee statute is substantive; and, if so, whether it is nevertheless repugnant to Mississippi law.
 
 1.
 
 69
 If the Tennessee statute is procedural, Mississippi law would apply, because for procedural matters, including statutes of limitations, Mississippi applies its own law. E.g., Walls, 906 F.2d at 146; Shewbrooks v. A.C. & S., Inc., 529 So.2d 557, 565-66 (Miss.1988). The parties do not dispute that the Tennessee statute of repose is substantive. It is not a simple statute of limitations and has been construed as being substantive. See Wayne v. Tennessee Valley Authority, 730 F.2d 392, 401-02 (5th Cir.1984), cert. denied, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985).
 
 2.
 
 70
 Even though the statute is substantive, Mississippi choice of law rules preclude its application if it is repugnant to Mississippi law. The above quoted statement in Mitchell, 211 So.2d at 512, that "a forum state will not favor application of a rule of law repugnant to its own purposes" is reflected in the rule stated later in McDaniel:
 
 
 71
 Notwithstanding that another state may have the most significant relationship to a given issue, we have expressed our reluctance to enforce the law of that state where such would be offensive to the deeply ingrained or strongly felt public policy of this state. Boardman v. United States Automobile Assoc., 470 So.2d 1024, 1038-39 (Miss.1985).
 
 
 72
 556 So.2d at 316. Pursuant to that rule, the Mississippi Supreme Court noted that it had applied the Mississippi comparative negligence statute instead of common law contributory negligence rules of other States, including in Mitchell. 556 So.2d at 316-317.
 
 
 73
 Appellants Allison and Tru-Amp contend that the Tennessee statute is likewise repugnant and, accordingly, that the Mississippi statute of limitations should apply. If so, their action would not be barred. On this point, the district court held:
 
 
 74
 [T]he [Tennessee] statute is not repugnant to Mississippi law, as the Mississippi Supreme Court has upheld and enforced statutes of repose. See, e.g., Moore v. Jesco, Inc., 531 So.2d 815, 817 (Miss.1988) (applying the statute of repose found at Miss.Code Ann. Sec. 15-1-41).
 
 
 75
 729 F.Supp. at 49. We agree.
 
 C.
 
 76
 Accordingly, based on our de novo review of the record, analysis of the Mississippi choice of law rules and application of those rules, including the application of Sec. 145 and Sec. 6, to the facts of this case, we hold that Tennessee law applies to the Allison, Tru-Amp and INA claims.[7]
 
 
 77
 Therefore, applying the Tennessee statute of repose to the plaintiffs' claims, the complaint must be dismissed. The circuit breaker was purchased by Bell from Harris Electric Supply Company of Nashville, which obtained it from ITE by purchase order dated June 6, 1975; and it was installed at the Bell facility sometime prior to September 21, 1976, roughly 12 years prior to the accident in August 1988. There are no genuine issues of material fact; and, based upon those facts, the action is barred by the Tennessee statute of repose.
 
 III.
 
 78
 Accordingly, the district court's summary judgment is
 
 
 79
 AFFIRMED.
 
 
 
 [1]
 Salve Regina College overrules our prior rule by which this court "customarily defer[red] to the district judge in a diversity case involving interpretation of the law of the state in which the judge sits." USX Corp. v. Tanenbaum, 868 F.2d 1455, 1457 (5th Cir.1989). Of course, we were "not bound by the district court's interpretation and [could] reverse the court if we believe[d] the court ha[d] incorrectly applied the state's law." Id. (quoting Dean v. Dean, 821 F.2d 279, 283 n. 4 (5th Cir.1987))
 
 
 [2]
 Earlier in the opinion, utilizing an analysis similar to the factors in Sec. 6 ("Choice of Law Principles"), and focusing especially on the distinction between Mississippi comparative negligence and the Louisiana contributory negligence bar, the court had stated that Mississippi law should be applied and that this determination could "be tested by a qualitative process of evaluation." Id. at 514. It then turned to a discussion of the above quoted sections
 
 
 [3]
 The appellants contend that the district court's quoted finding on whether Tru-Amp also worked in other States is erroneous, that Tru-Amp personnel performed inspection services under "the same type of boiler plate form Master Contract for Maintenance and Inspection of Electrical Switchgear Equipment contact." The only contract in the record is the one between Tru-Amp and Bell. However, Allison stated in his affidavit that during his employment, beginning in July 1987, he had worked at Bell facilities "located in the States of Louisiana, Alabama, Mississippi and Tennessee." In any event, whether Tru-Amp performed these services in those States does not affect our choice of law analysis here, as discussed in note 5, infra
 
 
 [4]
 The Allisons and Tru-Amp contend, however, that this is not the test to be applied under Mitchell; that instead, we should apply the above quoted assumption by the Mitchell court that the law of the forum, not of the place of injury, ordinarily applies, especially when the laws of the place of injury are repugnant to those of the forum. 211 So.2d at 512. But, as discussed above, application ordinarily of the law of the forum is clearly not the holding in Mitchell. And as discussed infra in part II.B.2., Mississippi law is applied in certain instances when that of the State whose law would otherwise apply is repugnant to Mississippi law; but that is not the case here
 Concerning the apparent contradiction between the Mitchell assumption concerning the law of the forum and its later holding, both state and federal courts in the cases following Mitchell have resolved this seeming contradiction in favor of application of the law of the place of injury "absent a more significant relationship with another state." McDaniel, 556 So.2d at 317. See also Hanley v. Forester, 903 F.2d 1030, 1032 (5th Cir.1990); Siroonian v. Textron, Inc., 844 F.2d 289, 292 (5th Cir.1988); Price, 784 F.2d at 604; Crouch v. General Electric Co., 699 F.Supp. 585, 590 (S.D.Miss.1988).
 In Davis, 743 F.2d at 1133, this court specifically discussed this possibly conflicting language in Mitchell and found Mitchell 's statement regarding presumption of the place of injury as controlling, because the language was directed specifically to conflict of laws principles in tort actions, while the earlier statement regarding law of the forum was in regard to conflict of laws in general. See also Walls, 906 F.2d at 146 (presumption that law of the state applies unless some other state has a more significant relationship to the accident and the parties). Therefore, as stated, under Mississippi's choice of law, Tennessee law would control, unless some other State has a more significant relationship.
 
 
 [5]
 Although this analysis may be applicable in some cases, we do not find it particularly helpful under the facts of this products liability action. Unless the product the defendant comes in contact with is mobile in its use, or the plaintiff has a history of contacts with the defendant's products before the injury, the center of the relationship under the district court's analysis will always be identical to the place of injury. For example, the product in Price was night goggles used when a helicopter crashed. See also Crouch (helicopter engine). As stated, the center of the relationship factor is not particularly relevant under these facts. Consideration of the center of the relationship as a relevant factor in choice of law inquiries is derived, for example, in the context of whether to apply guest statutes in automobile accident cases, in which the parties may have had a relationship in a State other than that of the accident. See, e.g. Vick v. Cochran, 316 So.2d 242 (Miss.1975). Obviously, mere contact by the plaintiff with a product of the defendant does not constitute the same type of relationship. Furthermore, the language of Sec. 145 makes allowance for the possibility that there will be no relationship between the parties by its use of the phrase "if any."
 
 
 [6]
 The statute's constitutionality has been upheld on several occasions. See Mathis, 719 F.2d 134; Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1138 (6th Cir.1986); Hawkins v. D & J Press Co., Inc., 527 F.Supp. 386, 388-89 (E.D.Tenn.1981)
 
 
 [7]
 The appellees claim that INA has not properly intervened and that it seeks a separate choice of law analysis to its subrogation claims. We find otherwise. On November 21, 1989, concerning INA, the district court entered an "Order Sustaining Motion for Leave to Intervene". INA intervened under the provisions of Miss.Code Ann Sec. 71-3-71, having paid worker's compensation benefits to James Allison. The district court and all parties were fully apprised of the nature of INA's prospective intervention, and its intervention was not opposed. And, in its reply brief, INA states that it is "not seeking the application of a separate conflict of laws analysis in this court."