United States Court of Appeals,

Fifth Circuit.

No. 97-60301.

Hunter W.P. DENMAN, a minor by and through W.T. DENMAN, Jr., Next Friend, Plaintiff-Appellant,

v.

SNAPPER DIVISION; Actava Group, Inc.; Jim Andrews, doing business as McComb Appliance & Equipment and/or Andrews Firestone; Andrews Firestone, Andrews Firestone, Inc., Defendants-Appellees.

Jan. 6, 1998.

Appeal from the United States District Court for the Southern District of Mississippi.

Before WIENER, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Plaintiff Hunter W.P. Denman ("Hunter") appeals the district court's summary judgment that North Carolina's products liability statute of repose bars his claims. We AFFIRM.

I.

On April 21, 1987, Hunter, a minor, severed his left foot while mowing a lawn with his grandfather's Snapper riding lawnmower. Although his foot was surgically replaced, he has not regained its full use. Hunter alleges that the mower was defective because it was not equipped with a deadman's switch or another safety device that might have prevented his injury and because it was accompanied by inadequate warnings.

Hunter's grandfather, W.T. Denman ("Denman"), a Mississippi resident, purchased the mower in 1980 from Jim Andrews d/b/a McComb Appliances and Equipment and/or Andrews Firestone or Andrews

1

Firestone, Inc. (collectively "Andrews") in Mississippi. The mower was manufactured in Georgia by Snapper Division of The Actava Group, Inc. ("Snapper"), a Delaware corporation with its principal place of business in Georgia. Denman loaned the mower to his son, Hunter's father, who at that time lived in North Carolina with Hunter. The accident occurred in North Carolina. Hunter has since moved to New Hampshire with his mother; his father continues to reside in North Carolina.

On May 10, 1996, Denman, the guardian of Hunter's estate, brought suit on Hunter's behalf in Mississippi state court, asserting products liability and negligence claims against Andrews, Snapper, and The Actava Group's successor corporation Multimedia International Group, Inc. Defendants removed the suit to federal district court. Hunter moved to remand on the sole ground that the district court lacked jurisdiction because one of the defendants was a non-diverse party. The district court concluded that there was complete diversity of citizenship between the parties and denied the motion to remand. The district court declined to address whether removal was improper because Andrews was an in-state defendant, concluding that the plaintiff had waived this objection by failing to raise it.

The district court granted summary judgment to defendants on the ground that Hunter's claim was barred by North Carolina's six-year statute of repose, which governs all tort claims arising from the use of an allegedly defective product. *See* N.C.GEN.STAT. § 99B-1(3) (1993). Hunter contends on appeal, as below, that

2

Mississippi law should govern his claim.

## II.

We turn first to Hunter's claim that the district court should have remanded this suit to Mississippi state court. Hunter moved to remand on the ground that the district court lacked jurisdiction because of the presence of a non-diverse defendant. Contrary to Hunter's assertion, however, there was complete diversity of citizenship between the parties: Hunter was a resident of New Hampshire at the time he filed suit;[1] the defendants were residents of Mississippi, Georgia, or Delaware. *See* 28 U.S.C. § 1332. Hunter should have objected instead that the presence of Andrews, a resident of Mississippi, violated the statutory prohibition on the removal of diversity suits if any defendant is a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Under the law of this circuit, however, the presence of an in-state defendant is a procedural defect that is waived unless raised within thirty days of removal. 28 U.S.C. § 1447(c); *In re Shell Oil Co.,* 932 F.2d 1518, 1521, 1523 (5th Cir.1991); *see also Williams v. AC Spark Plugs Div. of GM Corp.,* 985 F.2d 783, 786 (5th Cir.1993); *In re Digicon Marine, Inc.,* 966 F.2d 158, 160 (5th Cir.1992) (both explaining that any defects other than lack of subject matter jurisdiction are waivable procedural defects).

_____

[1]For the purposes of determining whether diversity of citizenship existed, the citizenship of Denman, Hunter's guardian, was not relevant. 28 U.S.C. § 1332(c)(2) ("the legal representative of an infant ... shall be deemed to be a citizen only of the same State as the infant....").

In short, Hunter failed to make the proper objection to removal.[2]  Had Hunter moved to remand on the ground that removal was improper because Andrews was an in-state defendant, remand would have been required.  Because he did not, the district court did not err in denying the motion to remand.

### III.

We next address Hunter's argument that the district court erred in holding that North Carolina's six-year statute of repose for products liability claims bars Hunter's claims.  He contends that the district court should have instead applied Mississippi's statute of limitations.

We review the district court's conflict-of-law determination *de novo.  Allison v. ITE Imperial Corp.,* 928 F.2d 137, 138 (5th Cir.1991).  It is well established that in diversity cases, a federal court must apply the conflict-of-law rules of the state in which it sits.  *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941);  *Allison,* 928 F.2d at 138;  *Mitchell v. Lone Star Ammunition, Inc.,* 913 F.2d 242, 249 (5th Cir.1990).[3]

Mississippi follows the "most significant relationship" or "center of gravity" test for determining the applicable law.  *See*

---

[2]Hunter's argument in the district court that, contrary to the defendants' assertions in their notice of removal, the Mississippi defendants were not "fraudulently joined" was insufficient to preserve his objection based on the in-state defendant rule.

[3]To the extent that Hunter argues that this court should apply North Carolina conflict-of-law principles, he is clearly incorrect.

*McDaniel v. Ritter,* 556 So.2d 303, 310 (Miss.1989) (en banc); *Mitchell v. Craft,* 211 So.2d 509, 515 (Miss.1968) (adopting the most significant relationship test as set out in the then-official draft of the Restatement (Second) of Conflict of Laws); *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1980) ("The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."). Under Mississippi law, the substantive law of the place of injury controls unless another state has a more significant relationship to the occurrence and the parties. *Allison,* 928 F.2d at 141-42 & n. 4.[4]

Under the Restatement approach adopted by Mississippi, the court examines the contacts of the relevant states, as set forth in § 145, in light of the policy considerations in § 6. *See Mitchell,* 913 F.2d at 249.[5] The Mississippi Supreme Court has noted that

---

[4]North Carolina's products liability statute of repose is substantive rather than procedural. *See Bonti v. Ford Motor Co.,* 898 F.Supp. 391, 397 (S.D.Miss.1995), *aff'd,* 85 F.3d 625 (5th Cir.1996); *Crouch v. General Elec. Co.,* 699 F.Supp. 585, 590-91 (S.D.Miss.1988); *Siroonian v. Textron, Inc.,* 844 F.2d 289 (5th Cir.1988) ("Mississippi honors the construction of a statute placed on it by the courts of the state whose legislature enacted it.") (citations omitted). If the statute were procedural, Mississippi would not be bound to apply it. *See Allison,* 928 F.2d at 144.

[5]Section 6 sets forth the following factors:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,

"The principles of Sections 6 and 145 of the Restatement (Second) defy mechanical application-they are less "rules of law' than generally-stated guideposts." *McDaniel,* 556 So.2d at 310, *quoted in Gann v. Fruehauf Corp.,* 52 F.3d 1320, 1325 (5th Cir.1995). The contacts taken into consideration under § 145 are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145. In this case, the parties agree that the law of either Mississippi or North Carolina controls.

The injury occurred in North Carolina. In some cases, such those involving an automobile accident in which the parties are not residents of the state where the accident occurred, the location of the injury is discounted as merely fortuitous. *See, e.g., Mitchell,* 211 So.2d at 513. As the district court correctly

---

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.

explained, this is not such a case.  *See Allison,* 928 F.2d at 143. Hunter was not passing through North Carolina, but actually resided there at the time of the injury.

Hunter's residency in North Carolina at the time of the accident is also a relevant contact under § 145(2)(c), which directs the consideration of "the domicile, residence, nationality, place of incorporation and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(c).  Defendant Andrews, on the other hand, is a resident of Mississippi.[6]

The other two § 145 factors also shed little light on what law should be applied.  Although the parties agree that under § 145(2)(b), the conduct giving rise to the injury took place in Georgia because the product was manufactured there, no party argues that Georgia law should be applied.  Nor does § 145(2)(d), the place where the relationship between the parties is centered, aid our inquiry.  *See Allison,* 928 F.2d at 142.  Although the product was sold in Mississippi by a Mississippi defendant to a Mississippi resident, the parties to this litigation (*i.e.,* Hunter and the defendants) had no pre-existing relationship.  Thus, the place where the relationship between the parties, if any, is centered is duplicative of the place of injury.  *See Allison,* 928 F.2d at 142 n. 5.

---

[6]Denman, the guardian of Hunter's estate and the purchaser of the mower, is also a Mississippi resident.  Because Denman is not a party to this litigation, however, his residency is not relevant to our analysis.  *Cf.* 28 U.S.C. § 1332(c)(2) (providing that the residency of the legal guardian of an infant is not relevant to determining citizenship for diversity purposes).

7

On two previous occasions, we have addressed the application of the Restatement factors in products liability cases where the issue was which state's statute of repose or limitation should be applied. *See Allison,* 928 F.2d at 138-44; *Mitchell,* 913 F.2d at 249-50. Although both decisions inform our decision in this case, neither is dispositive.

In *Allison v. ITE Imperial Corp.,* we applied Mississippi conflict-of-law rules to determine whether Tennessee or Mississippi law applied. 928 F.2d at 138-44. In that case, James Allison, a Mississippi resident, was injured on the job in Tennessee by a circuit breaker manufactured in Pennsylvania by a Delaware corporation with its principal place of business in Pennsylvania corporation. *Id* at 138. The court concluded that Allison's claims were barred by Tennessee's statute of repose. *Id.* at 144. We emphasized that under Mississippi's conflict-of-law rules, the law of the state where the injury occurs controls unless another state is shown to have a more significant relationship to the occurrence and parties. *Id.* at 141-42 & n. 4.

In *Mitchell v. Lone Star Ammunition,* the court considered whether Texas or North Carolina law applied to the plaintiffs' products liability claims. 913 F.2d at 249. The claims in *Mitchell* arose out of an accident that occurred in North Carolina when a defective mortar shell that was manufactured and distributed in Texas exploded prematurely. *Id.* Applying Texas conflict-of-law principles, we held that Texas law applied. *Id* at 250. We explained that because the defendants were not from North Carolina,

there was "[n]o compelling reason ... why the North Carolina legislature would have an interest in the application of its statute of repose to eliminate the claims of foreign plaintiffs against foreign defendants." *Id.* at 250. Conversely, we found that Texas had a substantial interest in the resolution of the dispute, an interest that was "particularly strong when the defective product in question was manufactured and placed in the stream of commerce in the State of Texas." *Id.* (citation omitted). Balancing these interests, we concluded that the law of the State of Texas should apply. *Id.*

Although this case is similar to *Mitchell,* it also differs in three crucial respects. First, *Mitchell* involved a product that was manufactured, in part, in Texas, 913 F.2d at 249; here, although the mower was sold in Mississippi, it was manufactured in Georgia. Second, the plaintiffs in the *Mitchell* case were not residents of state where the injury occurred, *id.;* in this case, Hunter was a North Carolina resident as the time of the accident. Third, and perhaps most importantly, in Mississippi, unlike Texas, the law of the place of injury is presumed to apply unless another state has a more significant relationship. *Compare Allison,* 928 F.2d at 141-42 & n. 4, *with Baird v. Bell Helicopter Textron, Inc.,* 491 F.Supp. 1129, 1139 (N.D.Tex.1980) (noting that under Texas law the location of the injury is merely a factor to be considered when determining the applicable law). Consequently, under the Restatement factors, Texas had a more significant relationship with the parties and occurrence than Mississippi has in this case.

In light of Mississippi law, the Restatement, and precedent of this court, we conclude that the sale of the mower in Mississippi by a Mississippi defendant provides an insufficient basis for finding that Mississippi has a more significant relationship than North Carolina. Simply put, Mississippi would have very little interest in applying its law to litigation arising out of an accident in North Carolina involving a resident of North Carolina and caused by a product manufactured in Georgia. Under the circumstances of this case, the fact that the mower entered the stream of commerce in Mississippi does not tip the balance in favor of applying Mississippi law when the Mississippi choice-of-law rules counsel that the law of the state of injury controls unless another state has a more significant relationship.

IV.

For these reasons, we AFFIRM the judgment of the district court.