# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60252

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2018

Lyle W. Cayce
Clerk

RUDOLPH F. VIENER,

      Plaintiff - Appellant

v.

MICHAEL J. CASANO,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:16-CV-18

Before STEWART, Chief Judge, and HAYNES and WILLETT, Circuit Judges.

PER CURIAM:*

      Plaintiff-Appellant Rudolph Viener appeals the district court's summary judgment in favor of Defendant-Appellee Michael Casano. Because we agree with the district court's application of Mississippi's choice-of-law rules, we affirm.

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60252

## I.     Facts & Procedural History

Plaintiff-Appellant Rudolph Viener has been a resident of Louisiana since 1987. Viener and his former spouse Laurie Viener ("Laurie"), also a Louisiana resident, were married in Louisiana in 2000, where they lived continuously since their marriage and raised two children. Laurie met Defendant-Appellee Michael Casano, a resident of Mississippi, on July 8, 2015, during a trip to Sandestin, Florida. Although still married to Viener, Laurie and Casano began a romantic relationship that day. Viener discovered the affair in late July 2015 when he overheard Laurie detailing her relationship with Casano to her mother over the phone. Viener filed for divorce on August 7, 2015 and Laurie filed for divorce a few days later. The parties' were granted a divorce in December 2015. Laurie and Casano married on February 20, 2016.

Viener filed suit against Casano in federal court in Mississippi in January 2016, invoking diversity jurisdiction and advancing claims under Mississippi law for alienation of the affections of Laurie. In his suit, Viener sought damages for negligent and intentional infliction of emotional distress, punitive damages, attorney's fees and costs. Viener also sought damages for the alienation of the affections of his children from their father. Casano filed for summary judgment in October 2016. In his motion, Casano argued that, under Mississippi's choice-of-law rules, Louisiana substantive law applied to the suit, and because Louisiana has never recognized the tort of alienation of affection, the suit should dismissed. Soon thereafter, Viener filed a motion for partial summary judgment seeking a ruling in his favor on all issues of liability.

In March 2017, the district court granted Casano's motion for summary judgment, denied Viener's motion for partial summary judgment, and dismissed the suit with prejudice. In its reasons for judgment the district court noted that it was required to apply Mississippi law to resolve the conflict of

2

No. 17-60252

laws in the suit.  Under Mississippi law, the district court employed the "center of gravity" test and ultimately determined that Louisiana had the most significant relationship to Viener's claims.  Proceeding under an application of the Restatement (Second) of Conflict of Laws, the district court further concluded that Mississippi did not have a strong public policy interest in adjudicating Viener's claims since they culminated around a marriage between Louisiana residents and not residents of Mississippi.  The district court determined that, because Louisiana substantive law applied to Viener's claims and Louisiana does not recognize a tort for alienation of affection, Casano was entitled to summary judgment.  This appeal ensued.

## II.    Standard of Review

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court."  *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015).  Summary judgment is appropriate if the record evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir. 2007). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).  "[R]easonable inferences are to be drawn in favor of the non-moving party." *Robinson*, 505 F.3d at 366.  "A panel may 'affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court.'" *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010)).

## III.   Discussion

Viener argues on appeal that Mississippi substantive law applies to these proceedings because an application of Mississippi's choice-of-law rules

reveals that Mississippi has the most significant relationship to the facts giving rise to his cause of action for alienation of affection.  We disagree.

In this case, subject-matter jurisdiction is based on diversity of citizenship and "[w]hen sitting in diversity, we apply the choice-of-law rules of the forum state—here, Mississippi—to determine which state's substantive law should apply." *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225 (5th Cir. 2010).  "Mississippi's choice-of-law test consists of three steps: '(1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws.'" *Ellis*, 625 F.3d at 225–26 (quoting *Hartford Underwriters Ins. Co. v. Found. Health Servs.*, 524 F.3d 588, 593 (5th Cir. 2008)).  Conflicting laws are substantive when the outcome determines whether or not the plaintiff has a viable claim. *See Hancock v. Watson*, 962 So. 2d 627, 629 (Miss. Ct. App. 2007).  "Alienation of affection claims are tort actions." *Id*. at 630.

In Mississippi, a plaintiff can establish a claim for alienation of affection by proving the following elements: "(1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss." *Knight v. Woodfield*, 50 So. 3d 995, 999 (Miss. 2011).  The state of Louisiana, however, does not recognize alienation of affection as a cognizable claim. *See Sullivan v. Malta Park*, 156 So. 3d 751, 762 (La. Ct. App. 2014) (observing Louisiana's longstanding "rule prohibiting recovery for alienation of affections or other 'heart balm' torts" and noting that a claim for alienation of affection has never been actionable in Louisiana).

Mississippi follows the "center of gravity" test of Section 145 of the Restatement which directs that tort actions should be governed by the law of the state with the most significant relationship to the occurrence giving rise to the dispute and the parties.  *See Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d

427, 433 (Miss. 2006); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971). "Contacts to be taken into account . . . to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* at § 145. Each contact is "to be evaluated according to [its] relative importance with respect to the particular issue." *Id.*

The Restatement instructs that "the weighing of [the] tort-specific factors [in § 145] should be guided by the seven general choice-of-law considerations set out in § 6."[1] *Ellis*, 625 F.3d at 226. "The Supreme Court of Mississippi has further explained that '[t]he principles of Sections 6 and 145 of the Restatement (Second) defy mechanical application—they are less 'rules of law' than generally-stated guideposts.'" *Id.*

Additionally, Section 154 of the Restatement speaks directly to actions against one who interferes with a marriage relationship. This section provides that:

> The local law of the state where the conduct complained of principally occurred determines the liability of one who interferes with a marriage relationship, unless, with respect to the particular

---

[1] Restatement § 6 factors include:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT § 154.  The comments to Section 154 provide that:

The state where the injury occurs may be said with approximately equal persuasiveness to be either (1) the state of matrimonial domicil, which is the state that has the closest relationship to, and the greatest interest in, the spouses, or (2) the state where the defendant's conduct had its greatest impact upon the spouse with whom he dealt.

*Id.* at § 154 cmt. c.  The comments further explain that when the defendant's injurious conduct takes place in more than one state, the principal place of his conduct decreases and "there is a corresponding increase in the importance of such other contacts, as the matrimonial domicil of the spouses and the domicil of the parties involved."  *Id.* at § 154 cmt. d.  In situations where a defendant communicates across state lines—through a letter, phone call, or text message, for example—the location of the defendant's conduct "plays a less important role in the selection of the applicable law."  *See id.*

Once a court has conducted these inquiries under the Restatement, the determination of which state has the most significant relationship to the plaintiff's claims results in a de facto presumption of which state's law to apply.  *See Allison v. ITE Imperial Corp.*, 928 F.2d 137, 143 (5th Cir. 1991); *Zurich*, 920 So. 2d at 433 n.2.  This presumption may be rebutted by an application of the general conflict-of-laws principles in Section 6 of the Restatement, including but not limited to competing public policy considerations.  *See Allison*, 928 F.2d at 143–44.

Here, neither party disputes that the district court properly applied Mississippi's choice-of-law rules to determine which state's substantive law

applies to Viener's claims. *See Ellis*, 625 F.3d at 225–26.[2]  A substantive conflict exists between the law of Mississippi and the law of Louisiana in the context of Viener's claim for alienation of affection because Mississippi recognizes the claim as cognizable but Louisiana does not. *See Hancock*, 962 So. 2d at 629 (noting that conflicting laws are substantive when the outcome determines whether or not the plaintiff has a viable claim).  It is undisputed that the conflicting laws at issue in this case are tort laws.  *Id.* at 629–30 (noting that "[a]lienation of affection claims are tort actions").

Accordingly, the next step is to examine the district court's application of what has come to be known as the "center of gravity" test, which directs that tort actions should be governed by the law of the state with the most significant relationship to the occurrence giving rise to the dispute and the parties.  *See Zurich*, 920 So. 2d at 433; RESTATEMENT § 145.  The parties do not dispute that the relevant time period is no longer than from July 8, 2015 (when Laurie and Casano met in Florida and began their affair) through December 9, 2015 (when the Vieners divorced).

An examination of the Restatement and the applicable case law indicates that the district court properly concluded that Louisiana, not Mississippi, bears the most significant relationship to Viener's claims under the center of gravity test.  As mentioned, Section 145 of the Restatement directs that relevant contacts to be taken into account under this analysis include (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, and place of business of the parties, and (4) the place where the relationship between the parties is centered.  *Id.*

---

[2] As stated, "Mississippi's choice-of-law test consists of three steps: '(1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws.'"  *Id.*

at § 145. Here, the injury occurred in Louisiana because that is where the Vieners were married and resided together during their marriage, and Louisiana is where the greatest impact was felt due to Casano's injurious conduct since the Vieners' marriage dissolved there. *See Bland v. Hill*, 735 So. 2d 414, 417 (Miss. 1999) (noting that the purpose of the cause of action for alienation of affection is to protect the marriage and its foundation); *see also* RESTATEMENT § 154 cmt. c. ("The state where the injury occurs may be said with approximately equal persuasiveness to be either (1) the state of matrimonial domicil, which is the state that has the closest relationship to, and the greatest interest in, the spouses, or (2) the state where the defendant's conduct had its greatest impact upon the spouse with whom he dealt."). Section 145 distinguishes between where the injury occurred and where the conduct causing the injury occurred. RESTATEMENT § 145. As the district court noted, the initial affair began in Florida, but Laurie and Casano continued the affair after Laurie returned to Louisiana. While communicating with Laurie when she was in Louisiana, Casano was traveling between Alabama, Florida, and Mississippi. Viener does not dispute that there is only evidence of one encounter between Casano and Laurie which took place in Mississippi during the relevant time frame. As noted, the Vieners were married in Louisiana, lived in Louisiana, and worked in Louisiana while Casano resided and worked in Mississippi. Finally, the relationship between the Vieners was centered in Louisiana where they were married, had children, and divorced. Laurie's relationship with Casano, on the other hand, began in Florida, took place on several occasions in Louisiana and Alabama, and only once in Mississippi during the relevant time period. Accordingly, Section 145 of the Restatement supports the district court's conclusion that Louisiana bears the most significant relationship to Viener's claims and consequently, a de facto

8

presumption in favor of applying Louisiana substantive law arises. *See Allison*, 928 F.2d at 143; *Zurich*, 920 So. 2d at 433 n.2.

An analysis of Mississippi jurisprudence[3] further reveals that this presumption cannot be rebutted by analyzing competing policy considerations as set forth in Section 6 of the Restatement. As it currently stands, applicable Mississippi case law indicates only that Mississippi has a strong public policy in favor of protecting the marriages of its own citizens while it is essentially silent as to whether Mississippi has a strong public policy interest in protecting the marriages of citizens from other states. *See Bailey v. Stanford*, No. 3:11-cv-00040-NBB, 2012 WL 569020, at *8 (N.D. Miss. Feb. 21, 2012) ("Mississippi has a strong interest in this litigation in light of its interest in providing for an effective means of redress for its citizens."); *Thomas v. Skrip*, 876 F. Supp. 2d 788, 798 (S.D. Miss. 2012) ("Especially given Mississippi's determination to retain a cause of action for alienation of affections, Mississippi has an interest in protecting its residents' rights in their marital relationships and providing them a convenient forum for redress."); *Knight*, 50 So. 3d at 1000–01 ("Mississippi has an interest in providing a forum for its residents who are injured by nonresident defendants."). As a result, the de facto presumption in favor of applying Louisiana law to these proceedings stands. *See Allison*, 928 F.2d at 143; *Zurich*, 920 So. 2d at 433 n.2.

---

[3] Given the paucity of case law addressing this tort in the context of a conflict-of-laws analysis, both parties, understandably, cite cases that address whether Mississippi can assert personal jurisdiction over a party subject to an alienation of affection lawsuit. These cases provide only limited guidance. They tell us—at most—that Mississippi has a significant interest in allowing its citizens to vindicate their rights in a Mississippi forum, and a non-resident paramour may be called to account in a Mississippi forum. But these cases do not tell us that Mississippi's interest in permitting an alienation of affections lawsuit should override another state's countervailing interest in not permitting such a lawsuit. Mississippi may very well have personal jurisdiction over a party who takes actions in Mississippi to alienate affections, but that does not mean that Mississippi's substantive law should apply in a conflict-of-laws scenario.

No. 17-60252

In light of the aforementioned, Mississippi jurisprudence and the applicable sections of the Restatement support the district court's determination that Louisiana bears the most significant relationship to Viener's claims. *See Zurich*, 920 So. 2d at 433; RESTATEMENT §§ 6, 145, 154. Accordingly, Louisiana substantive law applies. Because Louisiana does not recognize a claim for alienation of affection, the district court properly granted summary judgment in favor of Casano. *See Sullivan*, 156 So. 3d at 762 (observing that the tort of alienation of affection is not a cognizable claim in the state of Louisiana).

## IV.    Conclusion

For the aforementioned reasons, we affirm the district court's summary judgment in favor of Defendant-Appellee Michael J. Casano.